TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00662-CR






Parrin Hayes, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT

NO. 9024009, HONORABLE JON N. WISSER, JUDGE PRESIDING





O P I N I O N




 Appellant was convicted of possessing more than four grams but less than two
hundred grams of cocaine with intent to deliver. See Tex. Health & Safety Code Ann. § 481.112(a),
(d) (West 2003). (1) Because he had one prior felony conviction, he received an enhanced sentence of
twenty-five years' confinement. Tex. Pen. Code Ann. § 12.42 (West 2003). Appellant argues on
appeal that the district court erred in denying his motion to suppress because his detention was
unlawful. We agree. We will reverse the judgment of conviction and remand the cause to the trial
court for further proceedings.


FACTUAL AND PROCEDURAL BACKGROUND


 The relevant facts of this case are not in dispute. On February 4, 2001, Austin police
officer Clifford Jaeger observed appellant, whom he knew, walking on Sixth Street. Officer Jaeger
testified that he had encountered appellant before "a couple of times" and had detained him a few
months earlier on another officer's belief that appellant was dealing drugs. In the early morning
hours of February 4th, Officer Jaeger observed appellant simply walking across the street, not "doing
anything in particular." Appellant did not appear to be intoxicated or under the influence of drugs. 
Officer Jaeger then approached appellant and initiated a conversation.

 During the pretrial suppression hearing, Officer Jaeger was asked by the State: "As
you observed [appellant], did you notice anything peculiar that you recognized on his person?" 
Officer Jaeger answered: "On the initial stop, no. I basically, you know, went up, communicated
with him, and at that time I thought, you know, he possibly might have a warrant out. So I basically
ID'd him. I already had his name, and I went back to my vehicle and just ran his name to see if he
had any warrants out." (2)


 Meanwhile, Officer Rohre was working as a patrol officer in a marked unit and heard
over dispatch that Officer Jaeger was going to stop somebody. (3) Officer Rohre's job as backup
officer was to stand with appellant while Officer Jaeger returned to his vehicle to run a warrant
check. For three to four minutes, the three remained posted: Officer Jaeger inside the vehicle with
headlights on appellant; appellant standing a few feet in front of the vehicle; and Officer Rohre
standing within a few feet of appellant. While acting as Officer Jaeger's backup, Officer Rohre was
concentrating on appellant's hands, feet and face because, as he testified, a person's hands are the
most dangerous part of the body to an officer, and a person's feet and face "can indicate what
direction he may be considering running." Officer Rohre also monitored 360 degrees around himself
and Officer Jaeger to ensure that no one else approached unexpectedly.

 Officer Jaeger, still sitting in his vehicle, looked up at appellant and, from this vantage
point, saw in the headlights something he had not noticed before: a plastic baggie sticking out from
appellant's waistband. He emerged from the car to get a better look and recognized residue on the
bag that appeared to be crack cocaine. Officer Jaeger seized the baggie and placed appellant under
arrest.

 An Austin Police Department chemist later dried the contents of the baggie and
observed a positive reaction for the presence of cocaine in separate samples from each of twenty 
rocks and crumbs. Including adulterants and dilutants, the aggregate weight of the baggie's contents
was 4.47 grams.

 At a suppression hearing, appellant argued that the baggie should be suppressed as
the fruits of an unlawful seizure because the police did not have a reasonable, articulable suspicion
to justify his detention. The trial court denied appellant's motion to suppress. A jury found
appellant guilty of possession of cocaine in an amount of more than four grams but less than two
hundred grams with intent to deliver, a first-degree felony. The trial judge then sentenced appellant
to twenty-five years' imprisonment.


DISCUSSION


 Appellant appeals, arguing: (1) the trial court erred by denying a motion to suppress
the fruits of an illegal seizure; (2) the evidence was legally insufficient to establish the offense
charged; and (3) the trial court erred by denying a requested instruction for the lesser-included
offense of possession of less than four grams of cocaine.


Motion to suppress

 When reviewing a trial court's ruling on a motion to suppress, we review de novo
"mixed questions of law and fact" that do not turn on an evaluation of credibility and demeanor. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). By contrast, we afford almost total
deference to a trial court's determination of the historical facts that the record supports and those fact
findings that are based on an evaluation of credibility and demeanor. Id.; see also Leach v. State,
35 S.W.3d 232, 234-35 (Tex. App.--Austin 2000, no pet.). Here, the relevant facts and
circumstances are not in dispute, and the resolution of this appeal does not turn on an evaluation of
the credibility of a particular witness. Therefore, we review de novo the two questions on which this
case turns: whether appellant was "seized" in such a way that invokes his Fourth Amendment rights
and, if so, whether the totality of the circumstances gave the detaining officers a reasonable,
particularized, and objective basis for suspecting that appellant was engaged in criminal activity. 
Terry v. Ohio, 392 U.S. 1, 88 (1968); see Guzman, 955 S.W.2d at 89.


Whether appellant was detained

 The Fourth Amendment protects individuals against unreasonable searches and
seizures, including those entailing only a brief detention. United States v. Mendenhall, 446 U.S. 544,
551 (1980); see U.S. Const. amend. IV. A police officer may approach an individual to ask
questions or to request a search without having the level of probable cause or reasonable suspicion
that is required for a nonconsensual encounter. Florida v. Royer, 460 U.S. 491, 497-98 (1983);
Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). Yet "when officers have no basis
for suspecting a particular individual, they may generally ask questions of that individual . . . as long
as the police do not convey a message that compliance with their requests is required." Florida v.
Bostick, 501 U.S. 429, 439 (1991); see also Leach, 35 S.W.3d at 235. Where compliance is not
required and the police do not have the quantum of evidence needed to justify an investigatory stop,
see, e.g., Terry, 392 U.S. at 88, any incriminating evidence the police find during the encounter is
nonetheless admissible at trial if it is determined that as of the time of the discovery no seizure had
yet occurred. See Texas v. Brown, 460 U.S. 730, 735-40 (1983) (plurality op.); Leach, 35 S.W.3d
at 236; see also Wayne R. LaFave, Search and Seizure, § 9.3 at 86 (3d ed. 1996). Thus, this case
turns initially on whether the police had detained appellant so as to "seize" him for Fourth
Amendment purposes. 

 At the suppression hearing, the parties did not contest that appellant had been
detained. Rather, they debated whether suspicion of a warrant constituted reasonable suspicion to
justify detention of appellant. (4) Indeed, Officers Jaeger and Rohre consistently described their
encounter with appellant as a detention. During examination by defense counsel at the pretrial
suppression hearing, Officer Jaeger testified:


Q: And as I understand your testimony, you--you actually stopped and detained
Mr. Hayes on the side of the street there, correct?


A: Correct.


Q: He was not free to leave?


A: No, not at that time.


Q: And that was based on a hunch that there was a warrant available for him?


A: Correct. I thought there might have been a warrant issued for him, and I
basically ID'd him at that time and went back to my car just to run it and make
sure he didn't have one issued from the prior incident [involving the arrest of
two juvenile girls for cocaine possession].


Q: And, in fact, he did not have a warrant, did he?


A: No, I don't believe he did.



Further, during examination by the defense counsel, Officer Rohre testified at the pretrial
suppression hearing that appellant was not free to leave:

Q: And what was your role in the events dealing with Parrin Hayes?


A: My primary role was--I was actually just detaining Mr. Hayes while Officer
Jaeger conducted a background check on him.


Q: So you held Mr. Hayes there on the side of the street?


A: Not physically. I stood with him.


Q: But he was not free to leave, was he?


A: He was not, sir.



We recognize that the officers' nomenclature does not define the contours of the Fourth Amendment
analysis. See, e.g., Whren v. United States, 517 U.S. 806, 812 (1996) (explaining that subjective
perspective of officers is not determinative of actual nature of encounter). But in addition to the
officers' subjective belief that they had detained appellant, the totality of the circumstances indicates
that appellant was not free to leave.

 First, Officer Jaeger "ID'd" appellant and "went back to his car just to run it." See
United States v. Lambert, 46 F.3d 1064, 1068 (10th Cir. 1995) ("when law enforcement officials
retain an individual's driver's license in the course of questioning him, that individual, as a general
rule, will not reasonably feel free to terminate the encounter"). The State urges on appeal that "ID'd"
does not necessarily support the inference that Officer Jaeger physically retained appellant's
identification. Second, even if we assume the State's characterization of "ID'd" is correct, the
posture of the two officers indicates that appellant was not free to leave. While one officer sat in a
vehicle running a warrant check, a backup officer stood within a few feet of appellant. Had this been
a purely consensual encounter, as the State argues for the first time on appeal, (5) it would have been
unnecessary for a backup officer to stand beside appellant while the other officer was preoccupied
with running a warrant check. From a review of the totality of the circumstances, we conclude that
appellant was "seized" sufficiently to invoke Fourth Amendment protections.


The reasonableness of the detention

 The State asserts, in the alternative, that if appellant was seized, the officers had
reasonable suspicion to justify a temporary detention. The Texas Court of Criminal Appeals
explains that the reasonableness of a temporary detention:


must be examined in terms of the totality of the circumstances and will be justified
when the detaining officer has specific articulable facts, which taken together with
rational inferences from those facts, lead him to conclude that the person detained
actually is, has been, or soon will be engaged in criminal activity.



Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); see also Terry, 392 U.S. at 88 
(requiring officer to have specific articulable facts to warrant intrusion of freedom of citizen stopped
for further investigation); Holladay v. State, 805 S.W.2d 464, 471 (Tex. Crim. App. 1991) (same);
Johnson v. State, 658 S.W.2d 623, 626 (Tex. Crim. App. 1983) (same).

 Thus, consistent with the Fourth Amendment, a police officer may briefly stop a
suspicious individual in order to determine his identity or to maintain the status quo momentarily
while obtaining more information. Gearing v. State, 685 S.W.2d 326, 327-28 (Tex. Crim. App.
1985), overruled on other grounds by Woods v. State, 956 S.W.2d 33 (Tex. Crim. App. 1997). Here,
the police concede that appellant was doing nothing suspicious. Rather, the purpose for detaining
appellant beyond a casual encounter was to investigate whether he had an outstanding warrant;
Officer Jaeger suspected, based on the account by another officer of a separate event, that appellant
might have been sufficiently connected to that event to have an outstanding warrant. But the
"inarticulate hunch, suspicion, or good faith of the investigating officer is never sufficient to justify
a police officer to order a subject to stop [for further investigation]." Glass v. State, 681 S.W.2d 599,
601 (Tex. Crim. App. 1984).

 The police may make an investigatory stop to investigate past criminal activity so
long as they conform their actions to the same standards governing stops to investigate imminent or
ongoing crimes. United States v. Hensley, 469 U.S. 221, 228 (1985); Badgett v. State, 42 S.W.3d
136, 139 (Tex. Crim. App. 2001). That is, if police have a reasonable suspicion, grounded in
specific articulable facts, that a person they encounter was involved in or is wanted in connection
with a completed felony, then an investigatory stop may be justified to investigate that suspicion. 
Hensley, 469 U.S. at 229. Where, as here, a police officer relies on information provided by another
officer to justify a stop, there are two layers of analysis. First, we look to whether the officer making
the stop reasonably relied on the information that a stop was in order. Id. If the first prong is met,
we look to whether the officer providing the information had a sufficient level of suspicion to ask
for the stop or arrest. See id. (holding that where police make Terry stop in objective reliance on
flyer or bulletin, evidence uncovered in course of stop is admissible if police who issued flyer or
bulletin possessed reasonable suspicion justifying stop).

 Regarding the first prong, Officer Jaeger testified that he had never been told that
there was an active warrant for appellant or that a warrant had been prepared or presented to a
magistrate. All Officer Jaeger relied on was an account of another officer who suggested appellant
was associated with two girls recently arrested. This falls far short of the reliance on a "wanted
flyer" upheld in Hensley. 469 U.S. at 223. There, an officer stopped Hensley at the behest of
another department that issued a flyer stating that Hensley was wanted for investigation of an
aggravated robbery. Id. The wanted flyer described both Hensley and the date and location of the
alleged robbery, and it asked other departments to pick up and hold Hensley for the police in the
event that he were located. Id. Officer Jaeger's reliance also falls short of that upheld in Whitley v.
Warden. 401 U.S. 560 (1971). There, police stopped a suspect in reliance on a radio message issued
through a statewide law-enforcement radio network describing the suspect, his car, and the property
taken. Id. at 564. At least one version of the message indicated that a warrant had been issued. Id.
at 564 & n.5. By contrast, Officer Jaeger did not stop appellant pursuant to any wanted flyer,
bulletin, or even at the request of another officer. We hold that Officer Jaeger's reliance on an
account of suspicious association, without more, did not constitute an objectively reasonable basis
to detain appellant. (6) Therefore, we conclude that the trial court erred in overruling the motion to
suppress.

Legal sufficiency of the evidence

 Having determined that appellant's conviction must be reversed, we must examine
whether remand or rendition of acquittal is the appropriate remedy. To do so, we address appellant's
second point of error, which contends that the evidence is legally insufficient to establish his guilt
according to the indictment. We determine sufficiency of the evidence by reviewing all of the
evidence introduced, including improperly admitted evidence. (7) Deason v. State, 786 S.W.2d 711,
716 (Tex. Crim. App. 1990). We review the legal sufficiency of the evidence in the light most
favorable to the verdict to determine whether any rational finder of fact could have found all the
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979);
Moseley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). Sufficiency of the evidence is a
question of law, and the appellate court does not determine credibility issues. Wicker v. State, 667
S.W.2d 137, 143 (Tex. Crim. App. 1984). The trier of fact is the exclusive judge of the credibility
of witnesses and of the weight to be given their testimony. Bonham v. State, 680 S.W.2d 815, 819
(Tex. Crim. App. 1984).

 Appellant contends the evidence is legally insufficient to support the finding of an
aggregate weight of more than four grams. It is undisputed that the baggie's contents--twenty rocks
and some crumbs--weighed 4.47 grams before drying. Appellant contends, however, that the
methodology used by the State's chemist to test for the presence of cocaine did not prove that each
of the rocks and crumbs was properly included in the aggregate weight. Although two tests were
performed on the baggie's contents, appellant complains that the more sophisticated of the two tests
was not performed on each individual rock, but only on a composite sample taken from each of the
rocks. Thus, even though a presumptive test suggested that each of the twenty rocks and crumbs was
cocaine, and a more sophisticated test of a composite sample confirmed the presence of cocaine,
appellant would have the State test each individual rock with the most exacting standards available. 
We find this argument to be without merit.

 Appellant's argument hypothesizes that if any of the rocks were composed entirely
of a noncocaine substance then that rock could not be included in the aggregate weight of the
baggie's contents. The Texas Court of Criminal Appeals recently rejected this argument as
inconsistent with the revised definition of "adulturant or dilutant." (8) Melton v. State, 120 S.W.3d
339, 343-344 (Tex. Crim. App. 2003) (holding court of appeals erred by treating each rock as
separate controlled substance, rather than treating all rocks found in one bag as mixture). The court
in Melton squarely rejected the assertion that the State must prove that each individual rock contains
cocaine:

[I]t would be unnecessary to require the State to test each rock to determine whether
it contains cocaine, much in the same way that it would be unnecessary to require the
State to prove that each grain of a powdery substance contains cocaine, especially if
there were, hypothetically, 350 to 400 rocks instead of thirty-five to forty, all with the
same appearance, and all found in the same receptacle. The Legislature did away
with the requirement for this sort of hyper-technical analysis when it amended the
definition of "adulterant or dilutant."



Id.

 Here, the State's chemist testified before the jury that she first determined that the
aggregate weight of the baggie's contents was 4.47 grams. The chemist then placed a sample from
each rock in a chemical solution, which presumptively indicated the presence of cocaine base. Next
the chemist tested a composite sample of each of the rocks through a gas chromatograph mass
spectrometer, which indicated definitively the presence of cocaine. Based on these tests--performed
according to the established procedure that is used by the International Drug Association--the
chemist testified that she could affirm to a "scientific certainty" that every single rock contained
cocaine. (9)

 The chemist's testimony supports the jury's finding of guilt; she testified that she
could conclude to a scientific certainty that each of the rocks contained cocaine and, including
adulterants and dilutants, the aggregate weight of the baggie's contents was 4.47 grams. Viewing
the evidence in the light most favorable to the verdict, we find that there was legally sufficient
evidence on which the jury, as the trier of fact, could have found the essential elements of the crime
beyond a reasonable doubt. Appellant's legal sufficiency point is overruled.


Lesser-included offense of less than four grams

 Appellant contends that it was error to refuse an instruction on the lesser-included
offense of possession of less than four grams with intent to deliver because the contents of the baggie
weighed 2.76 grams when dried. This argument runs afoul of the statute, which includes adulterants
and dilutants in the weight of a controlled substance. See Tex. Health & Safety Code Ann.
§ 481.002(5) (defining "controlled substance" as "a substance, including a drug, an adulterant, and
a dilutant listed in [certain Schedules or Penalty Groups]," including "the aggregate weight of any
mixture, solution, or other substance containing a controlled substance"). A defendant is entitled
to a charge on a lesser-included offense only when two conditions are met: first, the lesser-included
offense must be included within the proof necessary to establish the offense charged, and, second,
some evidence must exist in the record that would permit a jury rationally to find that if the
defendant is guilty, he is guilty only of the lesser offense. Rousseau v. State, 855 S.W.2d 666,
672-673 (Tex. Crim. App. 1993). Here, appellant cannot meet the second condition because the
weight of the baggie's contents after drying is not the relevant weight a jury must consider under the
statute. Thus, appellant cannot establish that evidence in the record would permit a jury to find he
was guilty only of the lesser-included offense. Appellant's point is overruled.

CONCLUSION


 We find that the trial court erred in denying appellant's motion to suppress, but since
there was legally sufficient evidence to support the judgment of conviction, we reverse and remand
for further proceedings.



 

 Mack Kidd, Justice

Before Chief Justice Law, Justices Kidd and Puryear

Reversed and Remanded

Filed: April 1, 2004

Publish

1. Appellant was indicted under the Texas Controlled Substances Act:


(a) [A] person commits an offense if the person knowingly . . . possesses with
intent to deliver a controlled substance listed in Penalty Group 1.


. . . . 


(d) An offense under Subsection (a) is a felony of the first degree if the amount
of the controlled substance to which the offense applies is, by aggregate
weight, including adulterants and dilutants, four grams or more but less than
200 grams.


Tex. Health & Safety Code Ann. § 481.112(a), (d) (West 2003).
2. Officer Jaeger's suspicion that an arrest warrant for appellant might exist was based on
another officer's recent account to Jaeger of a separate incident. About a week or more earlier, this
other officer had arrested two juvenile girls for cocaine possession and had seen appellant exiting
the same vehicle from which the girls emerged. Appellant did not flee and was never pursued, but
had left before the officer could approach the two girls.
3. The Austin Police Department routinely sends backup during a suspect stop unless the
officer expressly states that no backup is needed.
4. The district judge characterized the inquiry only as to the reasonableness of the stop,
stating, "[this] case is somewhat more interesting for the proposition I guess that the defendant is
sufficiently notorious, at some point does the officer have the right to stop him because he's engaged
in so much illegal behavior in the not too distant past." 
5. Before consent to search is deemed effective, the prosecution must prove by clear and
convincing evidence that the consent was freely and voluntarily given, and neither physically nor
psychologically coerced. Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968) (consent must
be freely and voluntarily given); Dickey v. State, 716 S.W.2d 499, 504 (Tex. Crim. App. 1986) (en
banc) (same); Potts v. State, 500 S.W.2d 523, 526 (Tex. Crim. App. 1973) (consent must not be
physically or psychologically coerced). This burden is not satisfied by merely showing submission
to a claim of lawful authority. Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 329 (1979).
6. Because we conclude that the first prong is not met, we need not reach the second prong.
7. We must consider all of the evidence admitted by the trial court--even improperly admitted
evidence--because if all of the evidence is legally insufficient, a defendant is entitled to a judgment
of acquittal. Lockhart v. Nelson, 488 U.S. 33, 41 (1988); see also Dewberry v. State, 4 S.W.3d 735,
740 (Tex. Crim. App. 1999). By contrast, if all of the evidence is legally sufficient to support the
conviction, retrial is permissible under the Double Jeopardy Clause, and the defendant is entitled to
a new trial. Lockhart, 488 U.S. at 41. Permitting retrial does not offend the Double Jeopardy Clause
because it serves the interests of the defendant, affording him an opportunity to "obtai[n] a fair
adjudication of his guilt free from error." Id. at 42 (quoting Burks v. United States, 437 U.S. 1, 15
(1978)).
8. An adulterant or dilutant is "any material that increases the bulk or quantity of a controlled
substance, regardless of its effect on the chemical activity of the controlled substance." Tex. Health
& Safety Code Ann. § 481.002(49) (West 2003).
9. During the jury trial, the defense counsel asked the chemist on examination:


Q: So in your opinion the composite solution absolutely has to mean that every
single one of those [rocks] contains [cocaine], even those crumbs. 


A: I can say yes because the preliminary indicators are also there that says that
there was crack cocaine in there.