# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00664-CR

**Renee Thompson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-04-300061, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Renee Thompson pleaded guilty to the offense of murder after the trial court denied her motion to suppress her confession and a magistrate found her competent to stand trial. *See* Tex. Penal Code Ann. § 19.02(b)(2) (West 2003). The trial court assessed punishment in accordance with the plea agreement at imprisonment for 25 years in the Institutional Division of the Texas Department of Criminal Justice. Thompson appeals the denial of her motion to suppress and the finding of her competency on the basis that testing has indicated that her IQ is less than 55.

### BACKGROUND

In the late evening hours of January 10, 2004, Austin police officers responded to a call that someone had been stabbed at the Creekside Apartments. They discovered the body of Eric Harris lying in front of apartment 222; Harris was later pronounced dead at the scene. Detectives learned that Thompson lived in apartment 222 and that Harris was her live-in boyfriend. Witnesses

observed Thompson leaving the apartment complex in a hurry as the police arrived. Another witness told detectives that Thompson admitted to her that she stabbed her boyfriend.

Officer Richard Faithful located Thompson at a relative's house at approximately 2:50 a.m. Faithful asked Thompson to go with him to his office and explain what happened; Thompson agreed. Faithful brought Thompson into an interview room where a video recorder had already begun recording. Before beginning his questioning, Faithful advised Thompson of her *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 473 (1966). Faithful testified that he asked Thompson whether she understood the rights, and that she indicated that she did understand up until the last right was read to her, at which point she stated that she did not understand any of them. Faithful asked Thompson what parts she was having trouble understanding, then reworded them and talked through them with Thompson. After they talked for a few minutes Thompson indicated that she understood her rights.

Thompson then waived her *Miranda* rights and told Faithful that she would talk with him about what happened. Faithful testified, "I knew she knew what we were talking about and that she understood what was going on." Faithful testified that Thompson understood she could get into trouble by talking to him, and that she told him more than once, "I don't know why I'm saying this, this doesn't help me, but I'm going to tell the truth." Thompson admitted to Officer Faithful that she stabbed Harris because he threatened to "get with another girl."

At some point during the three-hour, video-taped interview, Thompson told Faithful that she did not want to talk to him anymore. Faithful testified, "I talked to her to try to clear that up and she continued talking to me . . . ." After that, Thompson signed a statement indicating that

2

she stabbed Harris. Faithful wrote out the statement and read it to Thompson before she signed it because Thompson cannot read or write. Thompson initialed the statement indicating that she had been advised of her *Miranda* rights, understood them, and waived them.

Thompson moved to suppress her written and video-taped statements; the motion was granted in part and denied in part. Thompson also asked the trial court to appoint a mental health expert to examine Thompson for competency to stand trial. The trial court appointed Dr. George Parker, a psychologist, and Dr. Richard Coons, a psychiatrist, to examine Thompson. Both doctors indicated that in their opinion Thompson was competent to stand trial. A magistrate also found Thompson competent to stand trial. Thompson appeals both rulings, arguing that with an IQ of less than 55, she could not knowingly and voluntarily waive her *Miranda* rights, and that she should not have been found competent to stand trial.

## DISCUSSION

### Motion to Suppress

At the hearing on Thompson's motion to suppress her statements, the State presented the testimony of Officer Faithful. He indicated that Thompson understood her rights and waived them despite her knowledge that she could get in trouble by talking to Faithful. Faithful testified that Thompson was "street smart," though she could not read and write. He testified that he was confident that Thompson knew what was going on because she had been read her *Miranda* rights numerous times and because she had multiple encounters with the criminal justice system in the past.

The only evidence that Thompson presented at the hearing on her motion to suppress was the written reports submitted to the trial court by Parker and Coons indicating their

3

opinion that Thompson was competent to stand trial. Parker states in his report that he reviewed background records from Austin Independent School District and Austin-Travis County Mental Health Mental Retardation Center, as well as a pre-sentence investigation report and Thompson's interview with Faithful. Parker also interviewed two of Thompson's family members. Parker conducted a psychological assessment and administered an IQ test to Thompson.

Parker's report indicates that Thompson understood why she was in jail when he talked to her there. Thompson thought that she should be able to get probation because she acted in self-defense. Parker stated that Thompson had an understanding of probation, of plea bargaining, and of different actors in the criminal justice system. Parker administered an IQ test on which Thompson scored less than 55; however, it was Parker's opinion that "she did not try hard to perform well on this task." Parker stated that Thompson was prone to resort to saying "I don't know"; Thompson claimed that she could not define words such as "bell," "lunch," and "police." In his report, Parker wrote, "It was not my impression that she did not know what a bell is, or lunch is, or wouldn't recognize a police officer as a police officer." Parker concluded that Thompson "possesses a sufficient present ability to understand reasonably the nature and reality of her legal situation, and to deal with her defense counsel reasonably."

Coons reviewed Thompson's Travis County Jail medical records, and performed a psychiatric interview and mental status examination. Coons's report states that Thompson told him she stabbed Harris because "I just got a bad temper." Coons indicated that Thompson was fully oriented except for the day of the month, that her memory was intact, and that her judgment and insight were adequate despite her below-average intelligence. Coons stated in his report that

4

Thompson "had an adequate understanding of the criminal justice system and the possible penalty she could receive if convicted of this offense."

The trial court granted Thompson's motion to suppress with respect to the portions of the video tape recorded after Thompson stated that she did not want to talk to Faithful anymore. The trial court denied the motion with respect to the rest of the video tape and the written statement. Thompson argues on appeal that because her IQ is less than 55, she could not have knowingly and voluntarily waived her *Miranda* rights.[1]

We review a trial court's ruling on a motion to suppress for abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). We afford almost total deference to a trial court's determination of the historical facts that the record supports and fact findings that are based on an evaluation of credibility and demeanor, while we review de novo mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Hayes v. State*, 132 S.W.3d 147, 151 (Tex. App.—Austin 2004, no pet.).

An inquiry into the waiver of *Miranda* rights has two dimensions. First, the waiver must be voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Colorado v. Spring*, 479 U.S. 564, 573 (1987); *Ripkowski v. State*, 61 S.W.3d 378, 384 (Tex. Crim. App. 2001). Second, the waiver must be made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to

---

[1] Thompson does not argue that her written statement should have been suppressed because it was signed after she told Officer Faithful that she did not want to talk to him anymore.

abandon it. *Spring*, 479 U.S. at 573; *Ripkowski*, 61 S.W.3d at 384. Thompson does not contend that she was intimidated, coerced, or deceived into making the statements at issue, so we will only address the second inquiry.

Mental impairment is a factor in ascertaining the voluntariness of a confession, although it is not alone determinative. *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995), *cert. denied*, 516 U.S. 977 (1995); *Smith v. State*, 779 S.W.2d 417, 429 n.8 (Tex. Crim. App. 1989). The question is whether the accused's mental impairment is so severe that she was incapable of understanding the meaning and effect of her statement. *Casias v. State*, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970).

The court of criminal appeals has repeatedly upheld the voluntariness of confessions given by defendants with low IQs. *See Penry*, 903 S.W.2d at 745-56 (appellant's IQ ranged from the forties to the seventies and he could not read or write); *White v. State*, 591 S.W.2d 851, 858-60 (Tex. Crim. App. 1979) (appellant's IQ was measured at 75, 84, and 86 and he was considered "borderline mentally retarded"), *overruled on other grounds by Bigby v. State*, 892 S.W.2d 864 (Tex. Crim. App. 1994); *Bell v. State*, 582 S.W.2d 800, 809 (Tex. Crim. App. 1979) (appellant was "mildly retarded"), *cert. denied*, 453 U.S. 913 (1981); *Nash v. State*, 477 S.W.2d 557, 563-64 (Tex. Crim. App. 1972) (appellant's IQ was 76 and he had the intelligence-emotional level of a 12 year old), *cert. denied*, 409 U.S. 887 (1972); *Casias*, 452 S.W.2d at 488-89 (appellant had an IQ of 68 with a mental age of eight to ten and had an education equivalent of approximately second grade); *Grayson v. State*, 438 S.W.2d 553, 555-56 (Tex. Crim. App. 1969) (appellant's IQ was 51).

While Thompson presented evidence that her IQ is less than 55, the psychologist who administered the test stated in his report that Thompson "did not try hard to perform well" on the test. Thompson presented no evidence that she was incapable of understanding the *Miranda* rights or the effect of their waiver. We hold that the trial court did not abuse its discretion in overruling Thompson's motion to suppress her statements because of her low IQ. We overrule Thompson's first issue.

**Competency**

In the hearing before the magistrate to determine whether Thompson was competent to stand trial, the magistrate admitted into evidence the reports of Parker and Coons, discussed above. In addition, Parker and Coons both testified at the hearing. No other evidence was presented.

Parker testified that Thompson knew what she was charged with and that she could go to prison for a long time. Thompson had given him a "coherent, internally consistent account of what happened" on the night she stabbed Harris. Parker testified that Thompson's IQ scores are "lower than her actual functioning." Parker concluded that Thompson was competent to stand trial, in part, because "she understands, essentially, what is going on, and what she did, and why she is in trouble, and what could happen." Parker also testified that, in his opinion, Thompson could consult with her attorney with a reasonable degree of rational understanding.

Coons testified that when he interviewed Thompson, they discussed the facts of the case, the potential plea bargain, and her interactions with her attorney. They also talked about the functions of the judge, jury, defense attorney, and the prosecutor, and the penalty Thompson might receive if convicted. When asked about Parker's statement that Thompson's IQ scores did not

7

accurately reflect her level of functioning, Coons testified that Thompson "does not strike me as being a 55 IQ individual, and I see lots of people with mental retardation and I would say that her functional level, when she wants to, would be higher than the 55 level." Coons concluded that in his opinion Thompson was competent to stand trial because she had an understanding of the proceedings and because she had sufficient ability to consult with her attorney.

The defendant bears the burden of proof by a preponderance of the evidence at a competency hearing. *Barber v. State*, 757 S.W.2d 359, 363 (Tex. Crim. App. 1988). We review competency findings by determining, after considering all the relevant evidence, whether the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Meraz v. State*, 785 S.W.2d 146, 154-55 (Tex. Crim. App. 1990). We must defer to the fact-finder's determinations regarding the credibility of witness testimony. *Westbrook v. State*, 29 S.W.3d 103, 112 (Tex. Crim. App. 2000).

A person is incompetent to stand trial if she does not have sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against her. Tex. Code Crim. Proc. Ann. art. 46B.003(a) (West Supp. 2006). A defendant is presumed legally competent to stand trial unless proved incompetent by a preponderance of the evidence. *Id.* art. 46B.003(b).

Because the only evidence presented at the competency hearing supported a finding that Thompson was competent to stand trial, the magistrate's finding that Thompson was competent was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

8

The magistrate did not err by finding Thompson competent to stand trial. We overrule Thompson's second issue.

**CONCLUSION**

Having overruled all of Thompson's points of error, we affirm the judgment of the trial court.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Waldrop

Affirmed

Filed:   October 13, 2006

Do Not Publish

9