# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00045-CR

**Lisa Cole, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY
## NO. C-1-CR-07-209550, HONORABLE ELISABETH ASHLEA EARLE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Lisa Cole pleaded no contest to the offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West 2003). The trial court assessed punishment at three days in jail. In a single point of error, Cole challenges the trial court's denial of her motion to suppress evidence. We will affirm the judgment.

### BACKGROUND

At the suppression hearing, the trial court heard evidence that, on May 19, 2007, at approximately 1:45 a.m., Lakeway Police Department Officer Stephanie Campbell was traveling eastbound on Lohman's Crossing, "one of the main roads in and out of Lakeway," when she saw a vehicle pulled over on the side of the road, in a lane specifically marked off for bicycles. Officer Campbell described what she saw as follows: "I saw a vehicle—a white passenger car pulled over on the side of the road with its light on and the engine running. And the high beams were on

the vehicle, and it was pulled all the way over, stationary." When Officer Campbell observed the vehicle, she pulled up behind it and put on her rear emergency lights[1] and also a directional "aerial" or "arrow" stick.[2] When asked why she did this, Campbell testified, "It's a safety—anytime you check on any person or vehicle, you put some type of hazard lights on, so that way you don't get hit by a vehicle, and that way you make yourself seen, especially at night." When asked if she was initiating a traffic stop, Campbell testified, "No, ma'am, I wasn't. I was checking the welfare of the subject that was in the vehicle, to see if anyone was even in the vehicle, because it's an odd place for the vehicle to be." In fact, when asked on cross-examination if she observed any traffic violation, Campbell testified, "No ma'am. She wasn't driving."

Officer Campbell walked up to the vehicle and made contact with the driver and sole occupant of the vehicle. Campbell testified,

> The driver identified herself as Lisa Kay Cole. She handed me a Florida driver's license. And I proceeded asking her if everything was okay, and where she was coming from, where she was headed. She was very disoriented, couldn't answer my questions, thought she was traveling on the wrong side of the roadway, and said that she was coming from a friend's house in Lakeway and trying to get back there, but didn't know if she was still in Lakeway or not.

---

[1] Campbell explained, "[W]e have LED lights. And there's a button, and you can make all the lights come on, half the lights come on, or just the rear portion. Whenever I check [] on somebody to check their welfare, I only put on my rear portion lights . . . so that way, vehicles don't hit my car."

[2] In her testimony, Officer Campbell first uses the term "directional aerial stick" and, later, uses the term "directional arrow." The record does not include a description of this device, although an "aerial stick" has been described as a "flare emergency personnel place on the ground to illuminate roadways." *Junemann v. Harris County*, 84 S.W.3d 689, 692 n.1 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

While Campbell was talking with Cole, she smelled a "very strong" odor of alcohol and asked Cole if she had been drinking. According to Campbell, Cole replied that "she had a couple of drinks; the last one was around 7 o'clock that evening. And she went to about three or four different bars, and also back over to her friend's house to have a couple of drinks." Suspecting that Cole might be intoxicated, Campbell told her to exit the vehicle and proceeded to administer the standard field sobriety tests. Campbell testified that Cole performed poorly on the tests. Campbell subsequently arrested Cole for driving while intoxicated.

Cole moved to suppress the above evidence of her intoxication on the basis that Officer Campbell's "detention" of Cole did not fall within the community-caretaking exception to the warrant requirement of the United States and Texas Constitutions. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9; *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973); *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999). The State argued in response that, at the time Campbell first encountered Cole, there was no detention. Therefore, according to the State, there was no need for the requirements of the community-caretaking exception to be satisfied.

The trial court denied the motion to suppress. Subsequently, Cole pleaded no contest to the offense of driving while intoxicated and was sentenced to three days in jail. This appeal followed.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). In other words, the trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any

3

applicable legal theory. *Id.* That rule holds true even if the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give trial courts almost complete deference in determining historical facts, but we review de novo the trial court's application of the law. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).

## ANALYSIS

Cole asserts that the trial court abused its discretion in denying her motion to suppress because Officer Campbell's initial "detention" of her was not justified by either reasonable suspicion or the community-caretaking exception to the Fourth Amendment's warrant requirement. The State maintains that, until Campbell asked Cole to exit her vehicle to perform field sobriety tests, Campbell's interaction with Cole was merely an encounter that did not implicate Cole's constitutional rights.

Encounters are distinct from detentions. An investigative detention occurs when a police officer restrains a person's freedom of movement, either by physical force or a show of authority. *State v. Griffey*, 241 S.W.3d 700, 705 n.6 (Tex. App.—Austin 2007, pet. ref'd) (citing *Johnson v. State*, 912 S.W.2d 227, 234 (Tex. Crim. App. 1995)). An investigative detention constitutes a seizure and implicates constitutional safeguards. *Id.* (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Investigative detentions require reasonable suspicion. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) ("An officer conducts a lawful

4

temporary detention when he has reasonable suspicion to believe that an individual is violating the law."); *State v. Nelson*, 228 S.W.3d 899, 902 (Tex. App.—Austin 2007, no pet.) ("A warrantless automobile stop is a Fourth Amendment seizure analogous to a temporary detention, and it must be justified by reasonable suspicion."). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007) (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)).

In contrast to detentions, encounters are consensual interactions between citizens and police that do not require reasonable suspicion and do not implicate constitutional rights. *Florida v. Royer*, 460 U.S. 491, 497-98 (1983). Encounters occur when police officers approach an individual in a public place to ask questions, request identification, or request consent to search as long as the interaction is consensual—that is, as long as an officer does not convey a message that compliance with the officer's request is required. *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991). To determine whether an encounter between a police officer and a citizen rises to the level of a detention, the inquiry is whether, "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *State v. Garcia-Cantu*, 253 S.W.3d 236, 242 (Tex. Crim. App. 2008) (citing *Kaupp v. Texas*, 538 U.S. 626, 629 (2003)).

As support for its argument that the initial interaction between Officer Campbell and Cole was merely an encounter, the State relies on this Court's decision in *Franks v. State*,

241 S.W.3d 135 (Tex. App.—Austin 2007, pet. ref'd). In *Franks*, a police officer noticed a vehicle parked just off the highway "after dark." *Id*. at 139. The vehicle was stopped at a rest area, but its engine was running and its dome light was on. *Id*. The officer parked his patrol car behind the vehicle, activated his overhead lights,[3] approached the vehicle, and began talking to Franks, the driver and sole occupant of the vehicle. *Id*. At some point during the conversation, Franks asked the officer if she could leave. *Id*. The officer told her that she could not. *Id*. Eventually, Franks was asked to step out of her vehicle, the vehicle was searched, and cocaine was found. *Id*. Franks filed a motion to suppress the evidence, which the trial court denied. *Id*. at 140.

This Court held that, once the officer refused Franks's request to leave, the encounter became an investigative detention requiring reasonable suspicion of criminal activity. *Id*. at 142-43. Finding none, this Court reversed the trial court's denial of the motion to suppress.[4] *Id*. at 145. However, this Court also explained why the *initial* interaction between the officer and Franks was not a detention:

> The initial interaction between [the officer] and appellant, after he approached the car, was an encounter. Although [the officer] parked his vehicle behind appellant's, nothing in the record suggests that the position of his vehicle blocked hers or prevented appellant from leaving the rest area by simply driving forward. Moreover, appellant does not allege that the patrol car's siren was activated, that she received any command over the patrol car's loudspeaker, or that [the officer] told her to turn off her car's engine when he approached.

---

[3] The officer testified that he activated the overhead lights on his patrol car to illuminate the rest area, which did not have any lighting. *Franks v. State*, 241 S.W.3d 135, 142 (Tex. App.—Austin 2007, pet. ref'd).

[4] This Court also explained why the community-caretaking exception to the warrant requirement did not apply to the facts of that case. *Id*. at 143-45.

*Id*. at 142.

The initial interaction between Officer Campbell and Cole is similar to the initial interaction in *Franks*. Cole's vehicle was already pulled over on the side of the road. The engine was running and the lights were on. Campbell parked her patrol car behind Cole's, activated her rear emergency lights, approached the vehicle, and initiated a conversation with Cole. There is nothing in the record to indicate that the position of Campbell's patrol car blocked Cole's or that Cole was prevented from leaving by simply driving forward. Nor does the record reflect that the patrol car's siren was activated, that Cole received any command from Campbell, or that Campbell told Cole to turn off her engine.

Cole asserts that the activation of Officer Campbell's rear emergency lights late at night made the initial interaction a detention. However, in *Franks*, this Court observed that the activation of a patrol car's lights, particularly "in an area that appeared dark and unoccupied," "does not necessarily constitute a detention." *Id*. This is because, "depending on the facts, officers may well activate their emergency lights for reasons of highway safety or so as not to unduly alarm the stopped motorists." *Martin v. State*, 104 S.W.3d 298, 301 (Tex. App.—El Paso 2003, no pet.). In this case, the record supports the trial court's implied finding that the patrol car's rear emergency lights were activated for safety reasons, as Campbell testified that she activated them so that other vehicles would not hit her car.

Cole also contends that providing her driver's license to Officer Campbell demonstrated that "she was submitting to the officer's show of authority." However, an officer asking for and examining a driver's license, without more, does not transform an encounter into

7

a detention. *See Royer*, 460 U.S. at 501. There must be additional actions taken by the officer which "amount to a show of official authority such that a reasonable person would have believed that he was not free to leave." *Id.*; *see also Bostick*, 501 U.S. at 437 (holding that "no seizure occurs when police ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage—so long as the officers do not convey a message that compliance with their requests is required."); *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997) (holding that encounter not rendered detention simply by virtue of fact that officer asked for defendant's identification). For example, in *Royer*, "officers identified themselves as narcotics agents, told [the defendant] that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart." *Id*. Based on those additional circumstances, the Supreme Court held that the defendant had been detained. *See id*. Similarly, in *Hayes v. State*, this Court held that an encounter became a detention when an officer took the defendant's identification back to his patrol car to run a warrant check and had a backup officer remain with the defendant while he was running the check. *See* 132 S.W.3d 147, 153 (Tex. App.—Austin 2004, no pet.).

In this case, there is no indication in the record of actions by Officer Campbell regarding Cole's driver's license of the sort that could transform the encounter into a detention. The testimony in the record relating to Cole's driver license is limited to the following: "The driver identified herself as Lisa Kay Cole. She handed me a Florida driver's license. And I proceeded

asking her if everything was okay, and where she was coming from, where she was headed." There was no further testimony elicited about the circumstances surrounding the driver's license.

Again, the test as articulated by the court of criminal appeals is whether, "taking into account all of the circumstances surrounding the encounter, *the police conduct* would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Garcia-Cantu*, 253 S.W.3d at 242 (emphasis added). We hold that the record supports the trial court's finding that the initial interaction between Campbell and Cole was an encounter, not a detention.

The State concedes that, once Officer Campbell asked Cole to step out of her car to perform field sobriety tests, the encounter became a detention. At that point, however, the record supports the trial court's finding that Campbell had reasonable suspicion to believe that Cole was driving while intoxicated. Campbell testified that she smelled a "very strong" odor of alcohol coming from Cole when she was speaking with her. Campbell also testified that, when she was talking to Cole, Cole "was very disoriented," "couldn't answer my questions," "thought she was traveling on the wrong side of the roadway," and "didn't know if she was still in Lakeway or not." Cole also admitted to Campbell that she had drinking that night, went to "about three or four different bars, and also back over to her friend's house to have a couple of drinks." These are specific, articulable facts that, when combined with rational inferences from those facts, would lead Campbell to reasonably conclude that Cole was driving while intoxicated. Because we conclude that Campbell's detention of Cole was supported by reasonable suspicion, we need not address the applicability of the community-caretaking exception.

The trial court did not abuse its discretion in denying Cole's motion to suppress. We overrule Cole's sole point of error.

## CONCLUSION

We affirm the judgment of the trial court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed:   August 20, 2008

Do Not Publish