COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 2-09-135-CR

TEDDY LEE MURPH                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Teddy Lee Murph appeals his conviction for the unlawful possession of a firearm by a felon. *See* Tex. Penal Code Ann. § 46.04 (Vernon Supp. 2009). After the trial court denied his motion to suppress, Murph pleaded guilty to the offense. Pursuant to a plea agreement, the trial court

---

[1] *... See* Tex. R. App. P. 47.4.

sentenced Murph to four years' confinement.  In one point, Murph argues that the trial court erred by denying his motion to suppress.  We will affirm.

## II.  Background

Fort Worth police officer G. C. Bates testified that he was patrolling the east side of Fort Worth on December 4, 2008.  At roughly noon, Bates said he observed Murph walking east on the south side of Rosedale Street.  What originally brought Murph to Bates's attention was the peculiar way he was walking and holding his side.  According to Bates, Murph "had his left hand pressed up against his upper right side of his body against the outside of the jacket, and his right hand down near the -- the bottom seam of the jacket."  Bates said it appeared that Murph was "attempting to conceal a large object underneath his jacket."  Although Bates testified that he never fully saw the object Murph attempted to conceal, Bates said that "[s]everal times I observed something black slip from beyond the bottom seam of the jacket and observed [Murph] each time push it back up underneath the jacket."  Bates said that utilizing his thirteen years of experience, he believed the object to be "the butt or stock of some type of long gun, either a shotgun or a rifle" because of the way Murph would cup his hand each time the object would fall.

Concerned that Murph had a weapon, Bates radioed for assistance. Bates said that before assistance arrived, Murph walked into a convenience store.

2

Bates also said that the convenience store sold liquor and that it would be unlawful to carry a weapon into the premises. Although he did not stop Murph, Bates said that he was concerned that Murph was going to commit a robbery. Bates testified that unless a suspect is "pointing a weapon at someone or [is] firing the weapon," Fort Worth Police Department procedure requires an officer to wait for assistance before stopping someone suspected of having a weapon.

Once assistance arrived, Bates said he and a fellow officer walked into the store. Murph was nowhere to be found. Using Murph's description, Bates asked the store clerk about Murph's whereabouts. The clerk responded that Murph had left the store. Concerned that Murph was carrying a weapon, Bates again radioed other officers to inform them of Murph's description and also inform them that Murph had walked out of the store and eluded officers' attempts to confront him. Murph did not attempt a robbery. Bates did not see Murph again until Murph was contacted by another officer.

Fort Worth police officer Sean Green responded to Bates's call for assistance. Green testified that although he knew it might take him several minutes to get to Bates's location, he responded because "[a]nytime an officer calls out any type of weapon related [issue], most officers respond." Green said it did take him several minutes to respond. Guided by Bates's description, Green spotted Murph near where Bates had reported. Green also observed that

3

Murph appeared to be concealing something in his jacket by holding one hand across his chest with the other hand cupping the object. Green pulled in front of Murph and "block[ed] all [] westbound traffic." Green then got out of his vehicle and shouted at Murph to get his hands in the air. At that time, Murph announced, "I have a sword." Green recalled that Murph's hands "started going towards his jacket, which [at that] time I did pull my weapon . . . and told him to get his hands back in the air and get on the ground." As Murph complied, he said, "I also have a gun." Once Murph was on the ground, Green discovered a sword with a seventeen-inch blade, a butterfly knife, a fully loaded magazine, and a pistol. The State charged Murph with the unlawful possession of a firearm by a felon. Murph filed a motion to suppress the weapons found on him. The trial court denied the motion to suppress, and Murph pleaded guilty. This appeal followed.

## III. DISCUSSION

In one point, Murph argues that the trial court erred by denying his motion to suppress. Specifically, Murph argues that the officers did not possess a proper basis for stopping him but rather were relying on a "hunch" when they ordered him to stop. We disagree.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.

4

Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id*. at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion to believe that the detained person is violating the law. *Terry v. Ohio*, 392 U.S. 1, 29–30, 88 S. Ct. 1868, 1884 (1968); *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). These articulable facts must amount to more than a mere hunch or suspicion. *Davis*, 947 S.W.2d at 244 (citing *Williams v. State*, 621 S.W.2d 609, 612 (Tex. Crim. App. [Panel Op.] 1981)). An officer is entitled to rely on information provided by another officer to justify a stop so long as the officer reasonably relied on the informing officer's information and, based on the information provided, the arresting officer had a sufficient level of suspicion to ask for the stop. *Hayes v. State*, 132 S.W.3d 147, 154 (Tex. App.—Austin 2004, no pet.) (citing *United States v. Hensley*, 469 U.S. 221, 228, 105 S. Ct. 675, 680). In determining whether there is a legitimate basis for reasonable suspicion, the facts may be viewed from the viewpoint of a trained law enforcement officer; facts that have no meaning to the untrained may provide the basis for the deduction and inference that caused the officer to focus his

attention on the accused. *Gilbert v. State*, 874 S.W.2d 290, 295 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). We consider the totality of the circumstances at the time of the detention to determine whether a reasonable suspicion existed to justify the officer's action. *Garcia*, 43 S.W.3d at 530.

When officers possess a reasonable suspicion justifying a temporary investigative detention, they may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety. *Rhodes v. State*, 913 S.W.2d 242, 247 (Tex. App.—Fort Worth 1995), *aff'd*, 945 S.W.2d 115, 117 (Tex. Crim. App.), *cert. denied*, 522 U.S. 894 (1997). Reasonableness must be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight. *Rhodes*, 945 S.W.2d at 118. Allowances must be made for the fact that officers must often make quick decisions under tense, uncertain, and rapidly changing circumstances. *Id.*

In this case, Green—the officer who detained Murph—possessed a reasonable suspicion that Murph was engaged in criminal activity. Green observed that Murph appeared to be concealing something in his jacket by holding one hand across his chest and cupping the object with his other hand. Green said that whatever Murph was hiding under his jacket was "large [and] could have been a weapon." Furthermore, Bates had relayed to Green that he

7

believed Murph was hiding a weapon and had gone into a store that sold liquor with that weapon—a violation of the law. *See* Tex. Penal Code Ann. § 46.02 (Vernon Supp. 2009). Bates's conviction about what Murph possessed caused him to call for backup. And when backup arrived, Bates tried to investigate; but Murph had slipped away. Green was aware that Bates had seen Murph with what appeared to be a weapon, that Bates was concerned enough to call for backup, and that Murph had eluded Bates's attempts to detain him. By this time, Green possessed articulable facts that, when combined with rational inferences in the mind of a trained law enforcement agent, led him to reasonably suspect that Murph had, or soon would be, engaged in criminal activity. Thus, upon spotting Murph, Green was justified in attempting to detain him by telling him to stop and to "get his hands in the air." At that moment, Murph informed Green that he had a weapon and started reaching toward his jacket. Green then pulled his handgun and ordered Murph to again put his hands in the air and to "get on the ground." Viewed from the perspective of a reasonable officer and giving proper allowances to Green, we conclude that Green's show of force was reasonably necessary to effect the goal of his stopping Murph to determine whether he was involved in criminal activity. *Rhodes*, 945 S.W.2d at 118 (reasoning that allowances must be made for the fact that officers must often make quick decisions under tense,

8

uncertain, and rapidly changing circumstances).  We hold that Green was justified in detaining Murph and overrule Murph's sole point.

## IV. CONCLUSION

Having overruled Murph's sole point, we affirm the trial court's judgment.


BILL MEIER
JUSTICE

PANEL:  GARDNER, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 28, 2010