The STATE of Texas, Appellant,

v.

Christopher CULLEN, Appellee.

No. 04–04–00583–CR.

Court of Appeals of Texas,
San Antonio.

May 18, 2005.

Discretionary Review Granted
Sept. 28, 2005.

Kevin P. Yeary, Asst. Criminal Dist. Atty., San Antonio, for appellant.

Mark Stevens, San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

■ In this interlocutory appeal brought by the State, we are asked to hold that the State is effectively denied its right to appeal a pre-trial order granting a defendant's motion to suppress if the trial court refuses the State's request for findings of fact and conclusions of law following its ruling. The State contends that in the absence of findings and conclusions, the trial court's ruling is insulated from meaningful review, thereby undermining the legislative grant of the State's right to appeal an adverse ruling on a suppression motion. Because there is no statute, rule, or compelling case law that requires a trial court to file findings and conclusions when it enters a suppression order, we decline the State's request that we impose such a requirement. Finding no abuse of discretion by the trial court, we affirm the court's order granting the defendant's motions to suppress.

### BACKGROUND

Christopher Cullen was charged by information with the offense of driving while intoxicated. Before trial commenced, Cullen filed several motions to suppress evidence. At the hearing on Cullen's motions, the State called San Antonio Police Detective Paul Biasiolli and San Antonio Police Officer Charles Marcus as witnesses.

Detective Biasiolli testified that in the early morning hours of October 29, 2003, he heard a report over his police radio that a blue Volkswagen with a ski rack was traveling erratically and at a high rate of speed. According to the report, the vehicle was heading in his direction. Approximately one minute later, Biasiolli heard a vehicle approaching his location at a high rate of speed. Biasiolli then saw a blue Volkswagen with a ski rack traveling northbound at 60 miles per hour. The vehicle maintained its speed as it passed him and continued through an intersection controlled by flashing yellow lights without slowing down. Biasiolli testified that when the vehicle attempted to make a left hand turn after the intersection, it crashed into a telephone pole.

Biasiolli and his partner immediately went to the accident scene. Upon arriving at the scene, Biasiolli observed Cullen exit the driver's side of the vehicle and a female individual exit the passenger's compartment. Biasiolli stated that there was no time for the passenger and driver to have switched positions. Biasiolli also observed that the vehicle's air bags had deployed during the accident. He did not see any containers of alcohol in the vehicle.

Biasiolli testified that neither Cullen nor his companion appeared to be injured. There were no signs of blood or bruises on

either Cullen or his companion. After checking on the condition of Cullen's passenger, Biasiolli turned his attention to Cullen. According to Biasiolli, Cullen was unsteady on his feet, had slurred speech, and had bloodshot, glossy eyes. Biasiolli, however, did not administer any field sobriety tests to Cullen. Biasiolli detained Cullen and his passenger until San Antonio Police Officer Charles Marcus arrived at the accident scene because he and his partner did not handle accidents.

Officer Marcus testified that he arrived at the accident scene approximately 35 seconds after the accident occurred. When Marcus arrived, he observed that Cullen had a slight sway and did not have his balance. Marcus allegedly had to hold out his hand to help Cullen maintain his balance. According to Marcus, Cullen had glassy, bloodshot eyes. Marcus also smelled a strong odor of alcohol on Cullen's breath.

Cullen informed Marcus that he was the driver of the vehicle and told Marcus that, "I'm not drunk. Well, okay. Just some. And, oh, I am so fucked. I'm in trouble." Although Marcus did not observe any bumps, bruises, burns, or blood on Cullen, Marcus asked Cullen whether he needed any medical attention. Cullen told Marcus that he was not injured.[1]

Cullen administered several field sobriety tests to Cullen, including the horizontal gaze nystagmus test, walk and turn test, and one-leg stand test. Cullen showed all six signs of intoxication on the HGN test and showed four of the eight signs of intoxication on the walk and turn test. When Cullen was instructed to perform the one-leg stand test, Cullen was unable to complete the test. Upon concluding the

test, Cullen allegedly turned around and put his hands behind his back without any prompting from Marcus. Marcus proceeded to place Cullen under arrest for driving while intoxicated.[2]

Cullen was transported to the San Antonio Police Department following his arrest. While in route to the San Antonio Police Department, Cullen told Marcus that he had drank too much that night and was "so fucked." Cullen also told Marcus that this was a "life changing" experience for him.

Once they arrived at the SAPD, Marcus began videotaping Cullen. Although only 20 minutes had elapsed since the arrest, Cullen did not appear as intoxicated as he did at the accident scene when he arrived at the SAPD. Marcus explained that "it seemed like [Cullen] ... had a lot of adrenaline in his system when he went into the video room so he had a sobering like effect from that."

After Marcus began to record Cullen, Cullen began to complain that he had a head injury. He also invoked his right to remain silent. As a result, Marcus stopped recording Cullen. After Marcus stopped videotaping Cullen, Marcus asked Cullen "if he was still injured." Cullen allegedly responded, "I am fucking fine."

Marcus testified that it was his opinion that Cullen had lost the normal use of his mental and physical faculties due to the introduction of alcohol into his system. Marcus further stated that, in his opinion, Cullen was "so intoxicated he wouldn't have known if he was [injured] or not." Following Marcus's testimony, the trial court granted Cullen's motions to suppress. The State requested findings of

1. According to Marcus, he asked Cullen whether he was injured "probably at least ten times" after the accident to ensure Cullen's safety.

2. Cullen's passenger also informed Marcus that she and Cullen had been at a wine tasting that night and had consumed quite a lot of alcohol.

fact and conclusions of law following the trial court's ruling, but the court declined to make such findings. This appeal followed.

## DISCUSSION

■ In its first issue, the State claims a trial court's failure to file findings of fact and conclusions of law when they are requested by the State is an independent ground for reversal of the trial court's suppression ruling. Trial courts, however, are not required to file findings of fact and conclusions of law when suppressing evidence. *State v. Guo*, 64 S.W.3d 662, 668 (Tex.App.-Houston [1st Dist.] 2001, no pet.); *see also State v. Rivenburgh*, 933 S.W.2d 698, 702 n. 1 (Tex.App.-San Antonio 1996, no pet.). There is simply no statutory requirement or other legal precedent requiring a trial court to make findings of fact and conclusions of law when suppressing evidence. *Guo*, 64 S.W.3d at 668.

The State essentially urges this court to adopt a rule requiring trial courts to enter findings of fact and conclusions of law when timely requested because such a rule would ensure that the State is afforded the right of review "lawfully granted to it by article 44.01 of the Texas Code of Criminal Procedure." *See* TEX.CODE CRIM. PROC ANN. art. 44.01 (Vernon Supp.2004–2005). The State claims it is denied its right to review under article 44.01 when the trial court refuses to enter findings of fact and conclusions of law because, as a general rule, appellate courts are unable to hold the trial court abused its discretion in granting a defendant's motion to suppress without such findings. *See State v. Cardenas*, 36 S.W.3d 243, 245 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). The State asserts that without findings of fact and conclusions of law, "an appeal by the State is a complete waste of time, and the State ob-

tains no real review of the correctness of the trial court's ruling."

Although we recognize the practical limitations on the effectiveness of appellate review when there are no findings or conclusions, we decline the State's invitation to impose a requirement on trial courts to file findings of fact and conclusions of law when suppressing evidence. We do not believe it is for this court to promulgate such a rule. *See State v. Mancuso*, 919 S.W.2d 86, 87 (Tex.Crim.App.1996) ("It is the duty of the Legislature to make laws, and it is the function of the Judiciary to interpret those laws."). If the State believes that justice demands a rule requiring trial courts to make findings of fact and conclusions of law when suppressing evidence, it should take its argument to the Legislature, the Court of Criminal Appeals, or the Texas Supreme Court Rules Advisory Committee. The State's first issue is therefore overruled.

■ In its second issue, the State contends the trial court erred by granting Cullen's motions to suppress because it believes sufficient probable cause existed to arrest Cullen for driving while intoxicated. In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim.App.2000). Accordingly, the trial court may believe or disbelieve all or any part of a witness's testimony, even if the testimony is not controverted. *Id.* When, as here, the trial court does not make findings of fact, we view the evidence in the light most favorable to the court's ruling and assume that the court made implicit findings that support its ruling, provided those implied findings are supported by the record. *Id.* We will sustain the trial court's ruling if the ruling is correct on any theory of law applicable to the case. *Id.* at 855–56.

When reviewing a trial court's ruling on a motion to suppress, we afford almost total deference to a trial court's determination of the facts, especially when the court's findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim. App.1997). We afford the same amount of deference to mixed questions of law and fact if the resolution of those ultimate questions turn on an examination of credibility and demeanor. *Id.* If mixed questions of law and fact do not relate to credibility and demeanor, then we review such determinations de novo. *Id.*

Here, the only evidence presented at the suppression hearing was the testimony of Officers Biasiolli and Marcus. "Assuming that the State's legal arguments are sound, the only valid reason for the trial court to have granted the motion[s] to suppress is that it didn't believe the State's version of the evidence." *Guo*, 64 S.W.3d at 666–67. The trial court was free to disbelieve all or any part of Biasiolli's or Marcus's testimony during the suppression hearing. Faced with a cold appellate record, we must defer to the trial court's assessment of the officers' credibility. Because the trial court was not compelled to believe the officers' testimony, we hold that the trial court was within its discretion in granting Cullen's motions to suppress. Accordingly, the State's second issue is overruled.[3]

### CONCLUSION

Based on the foregoing, we affirm the trial court's order granting Cullen's motions to suppress.

---

**3.** The State argues that we should review the trial court's suppression ruling *de novo*. However, "[w]ithout findings of fact, there is simply no set of 'concrete' facts upon which to conduct a *de novo* review." *Guo*, 64 S.W.3d at 667.