The STATE of Texas, Appellant,

v.

Christopher CULLEN, Appellee.

No. 04–04–00583–CR.

Court of Appeals of Texas,
San Antonio.

March 28, 2007.

Discretionary Review Refused
June 27, 2007.

Kevin P. Yeary, Asst. Crim. Dist. Atty., San Antonio, for appellant.

Mark Stevens, San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, SANDEE BRYAN MARION, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

This case is on remand from the Court of Criminal Appeals. *See State v. Cullen,* 195 S.W.3d 696 (Tex.Crim.App.2006). On remand, we must determine whether the trial court abused its discretion by granting Christopher Cullen's motions to suppress. Because the facts of this case demonstrate there was probable cause to arrest Cullen for driving while intoxicated, we reverse the trial court's orders granting Cullen's motions to suppress and remand for further proceedings.

### BACKGROUND

In the early morning hours of October 29, 2003, San Antonio Police Detective Paul Biasiolli heard a report over his police radio that a blue Volkswagen with a ski rack was traveling erratically and at a high rate of speed. According to the report, the vehicle was heading in his direction. Approximately one minute later, Biasiolli heard a vehicle approaching his location at a high rate of speed. Biasiolli then saw a blue Volkswagen with a ski rack traveling northbound at 60 miles per hour. The vehicle maintained its speed as it passed him and continued through an intersection controlled by flashing yellow lights without slowing down. Biasiolli observed the vehicle crash into a telephone pole when it attempted to make a left-hand turn at the intersection at 60 miles per hour.

Biasiolli and his partner, Detective Troy Marek, immediately responded to the accident, which Biasiolli described as "fairly violent" in nature, and which caused the vehicle's air bags to deploy. According to Biasiolli, Cullen was unsteady on his feet, had slurred speech, and had bloodshot, glassy eyes. Biasiolli detained Cullen and his passenger until San Antonio Police Officer Charles Marcus arrived at the accident scene.

Officer Marcus arrived at the accident scene approximately 35 seconds after the accident occurred. When Marcus arrived, he observed that Cullen had a slight sway and did not have his balance. Marcus had to hold out his hand to help Cullen maintain his balance. According to Marcus, Cullen had slightly glassy, bloodshot eyes. Marcus also smelled a strong odor of alcohol on Cullen's breath. Both Cullen and his passenger indicated to Marcus that they had consumed alcohol. Marcus administered several field sobriety tests to Cullen, including the horizontal gaze nystagmus test, walk and turn test, and one-leg stand test. Marcus reported that Cullen either failed each test or did not complete the test. Following the tests, Marcus placed Cullen under arrest for driving while intoxicated.

Cullen was then transported to the San Antonio Police Department. Marcus and Cullen arrived at the SAPD approximately 20 minutes after Cullen's arrest, at which time Marcus began videotaping Cullen. Once Marcus began videotaping Cullen, however, Cullen complained that he suffered a head injury during the accident.

The videotaping session was subsequently terminated when Cullen invoked his right to remain silent.

Cullen filed several motions to suppress, including: a motion to suppress evidence; a motion to suppress written and oral statements; and a motion to suppress videotape and audiotape evidence. In his motions, Cullen argued that his warrantless arrest was illegal under the Fourth Amendment of the United States Constitution, article I, section 9 of the Texas Constitution, and state statutory law. At the suppression hearing, Cullen offered no evidence in support of his motions. Cullen argued to the court that there was no probable cause to arrest him for DWI in light of the fact that he sustained a head injury during the accident. Cullen noted that a "head injury ... confuse[s] symptoms of intoxication" and, as a result, Officer Marcus's conclusions about his intoxication were not credible based on this fact. Cullen also argued that the State's own exhibit, the videotape made following his arrest, shows that he was not intoxicated.

The State argued that the testimony of officers Biasiolli and Marcus was credible and established probable cause to arrest Cullen for DWI. The State argued that the officers had probable cause to arrest Cullen for DWI based on the totality of the following facts and circumstances: the manner in which Cullen was driving his vehicle that morning (speeding and driving erratically); the fact that Cullen was involved in an accident; inculpatory statements Cullen made to Officer Marcus after the accident; Cullen's appearance (unsteady on his feet, alcohol on his breath, slurred speech, and bloodshot, glassy eyes); and the failed field sobriety tests. The State also argued that Officer Marcus had no reason to believe Cullen suffered a head injury during the accident because Cullen neither complained of a head injury nor showed any signs of a head injury. The State further argued that the issue of whether "there was a head injury ... that may have [a]ffected the results of the field sobriety tests ... [is] a fact issue for the jury to consider as to the weight of the evidence ... and the credibility of the officer."

Following the arguments, the trial court granted Cullen's motions to suppress. The State urged the trial court to enter findings of fact and conclusions of law following its ruling, but the trial court refused the State's request. On appeal to this court, the State argued that it is effectively denied its right to appeal a pre-trial order granting a defendant's motion to suppress if the trial court refuses the State's request for findings of fact and conclusions of law. In the absence of any statutory or case law requirement for such findings and conclusions, this court affirmed the trial court's orders. *See State v. Cullen*, 167 S.W.3d 428, 429 (Tex.App.-San Antonio 2005), *rev'd*, 195 S.W.3d 696 (Tex.Crim.App.2006). On petition for discretionary review, however, the Court of Criminal Appeals concluded that the trial court's refusal to act prevented meaningful appellate review of the decision to grant the motions to suppress. *Cullen*, 195 S.W.3d at 698. The court therefore reversed our judgment and remanded the case to this court to order the trial court to enter findings of fact and conclusions of law. *Id.* at 700.

This court subsequently ordered the trial court to enter findings of fact and conclusions of law. In accordance with our order, the trial court filed its findings and conclusions with this court. The trial court entered fourteen findings of fact which essentially recap the testimony of Detective Biasiolli and Officer Marcus regarding the accident, Cullen's appearance after the accident, Cullen's performance on

the field sobriety tests, and Cullen's conduct during the videotaping at the police station. Pertinent to this appeal is Finding Number 14, in which the court:

> finds that the defendant was speeding at 60 miles per hour and hit a telephone pole at that speed. The Court finds that the defendant's air bag hit him at that speed. The Court finds that the defendant's head was traumatized. The Court finds that the testimony of Officer Marcus about the results of the field sobriety tests is not credible due to the head trauma. The Court finds that the defendant's red, bloodshot, glassy eyes were caused by the head trauma. The court finds that the defendant's unsteadiness on his feet was caused by the head trauma. The Court finds the defendant had a smell of alcohol on his breath.

The trial court also entered the following conclusion of law:

> [T]he Court finds that the only credible evidence is that the defendant was speeding and had the smell of alcohol on his breath. Therefore, there was no probable cause to arrest the defendant for driving while intoxicated.

### STANDARD OF REVIEW

We review the trial court's ruling on a motion to suppress for an abuse of discretion. *Swain v. State,* 181 S.W.3d 359, 365 (Tex.Crim.App.2005). In reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App. 2006). When a trial court makes explicit fact findings, we determine whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings. *Id.* We then review "the trial court's legal ruling *de novo* unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal ruling." *Id.*

### CONSTITUTIONALITY OF THE WARRANTLESS ARREST

 Cullen's motions to suppress challenged the constitutionality of his warrantless arrest, arguing that the arrest occurred without probable cause. Both the United States Constitution and the Texas Constitution prohibit unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. When an accused challenges a warrantless arrest based on constitutional grounds, the proper inquiry is the reasonableness of the seizure under the totality of the circumstances. *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *State v. Steelman,* 93 S.W.3d 102, 106 n. 5 (Tex.Crim.App.2002). In order to satisfy the reasonableness requirement, a warrantless arrest must be supported by probable cause. *Johnson v. State,* 912 S.W.2d 227, 235 (Tex.Crim.App.1995). Probable cause exists where an officer possesses a reasonable belief, based on facts and circumstances either within the officer's personal knowledge or about which the officer has reasonably trustworthy information, that an offense has been or is being committed. *Torres v. State,* 182 S.W.3d 899, 902 (Tex.Crim.App.2005). Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a finding by a preponderance of the evidence. *State v. Parson,* 988 S.W.2d 264, 268 (Tex.App.-San Antonio 1998, no pet.). " '[W]hen there has been some cooperation between law enforcement agencies or between members of the same agency, the sum of the information known to the cooperating agencies or officers at the time of an arrest is to be considered in determining whether there was sufficient probable cause therefor.' " *Taylor v. State,* 82

S.W.3d 134, 138 (Tex.App.-San Antonio 2002, no pet.).

Here, it is undisputed that Cullen was involved in a car accident. Officer Biasiolli personally observed Cullen crash his vehicle into a telephone pole after Cullen attempted to negotiate a left-hand turn. When Officer Marcus arrived at the scene, he questioned Cullen and observed the odor of alcohol on Cullen's breath. Marcus subsequently administered field sobriety tests, which further confirmed to the officer that Cullen was intoxicated. In light of the knowledge possessed by Officer Marcus, which included his personal observations of Cullen and the information provided to him by Officer Biasiolli, Marcus concluded probable cause existed to arrest Cullen for DWI.

The trial court's findings of fact and conclusion of law indicate that the court did not agree with Officer Marcus's assessment that the known facts and circumstances would cause a reasonable officer to believe Cullen operated his vehicle while intoxicated. The court expressed in its findings that the only credible evidence concerning the charged offense was that officers observed Cullen speeding at the time he collided with the telephone pole and that Cullen had alcohol on his breath. Consequently, the trial court concluded the totality of the circumstances did not constitute probable cause to arrest Cullen for DWI.

The trial court's findings of historical facts indicate that the trial court essentially eliminated Cullen's bloodshot, glassy eyes, slurred speech, unsteadiness on his feet, and poor showing on the field sobriety tests as relevant facts and circumstances in its probable cause analysis due to the head trauma Cullen purportedly suffered. Even if we afford no weight to these particular facts and circumstances in our probable cause analysis, the trial court's remaining findings demonstrate Officer Marcus had probable cause to arrest Cullen for DWI. The court's findings show that Officer Marcus knew Cullen was involved in a single vehicle accident witnessed by two police officers. They further show that Cullen was speeding as he attempted to negotiate a turn immediately before the accident. Marcus also knew that Cullen smelled of alcohol. Based on existing precedent from the court of criminal appeals and our sister courts, we believe such facts and circumstances, when viewed together, are sufficient to establish probable cause to arrest for DWI. *See Pesina v. State*, 676 S.W.2d 122, 127 (Tex. Crim.App.1984) (recognizing that officer had probable cause to arrest defendant where the defendant was involved in a collision with another vehicle and had a strong odor of alcohol on his breath); *Knisley v. State*, 81 S.W.3d 478, 483–84 (Tex.App.-Dallas 2002, pet. ref'd) (holding probable cause existed to arrest defendant for DWI where officer knew the defendant was involved in a single vehicle accident, was unable to answer simple questions, and smelled of alcohol); *Broadnax v. State*, 995 S.W.2d 900, 904 (Tex.App.-Austin 1999, no pet.) (holding probable cause existed to arrest defendant for DWI where officer knew the defendant crashed his vehicle trying to pass a truck and officer smelled alcohol on defendant's breath after the accident); *Mitchell v. State*, 821 S.W.2d 420, 424–25 (Tex.App.-Austin 1991, pet. ref'd) (holding probable cause existed to arrest defendant for DWI where arresting officer learned from fellow officer that the defendant had been involved in a serious single vehicle accident and smelled of alcohol). The arrest therefore did not violate Cullen's rights under the Fourth Amendment of the United States Constitution or article I, section 9 of the Texas Constitution.

## STATUTORY AUTHORIZATION TO ARREST

Cullen's motions to suppress also complained that his arresting officer had no statutory authority to arrest him without a warrant. "If the accused makes a statutory argument, the proper inquiry is (1) whether there was probable cause with respect to that individual and (2) whether the arrest fell within one of the statutory exceptions [to the warrant requirement]." *Steelman,* 93 S.W.3d at 106 n. 5. Because we have already determined that Officer Marcus had probable cause to arrest Cullen for DWI, we focus our inquiry on whether Cullen's arrest fell within one of the statutory exceptions to the warrant requirement.

Chapter 14 of the Texas Code of Criminal Procedure defines the statutory exceptions permitting warrantless arrests. TEX. CODE CRIM. PROC. ANN. art. 14.01 *et seq.* (Vernon 2005). One of those exceptions, article 14.01(b), provides that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." *Id.* art. 14.01(b). Here, the record indicates that the arresting officer, Officer Marcus, communicated with his fellow officers concerning their observations that morning. Having communicated with his fellow officers about their observations, and having personally observed evidence of the offense himself, we deem the underlying offense to have occurred within Officer Marcus's presence or view as required by article 14.01(b). *See Steelman,* 93 S.W.3d at 107 ("An offense is deemed to have occurred within the presence or view of an officer when any of his senses afford him an awareness of its occurrence."); *Gonzales v. State,* 638 S.W.2d 41, 45 (Tex.App.-Houston [1st Dist.] 1982, pet. ref'd) (recognizing that an officer who observes the commission of an offense can communicate his observations to other officers who, in turn,

can make a valid warrantless arrest of the defendant pursuant to the authority of article 14.01). Cullen's arrest therefore fell within a statutory exception permitting his warrantless arrest.

### CONCLUSION

Based on the foregoing, we sustain the State's complaint and hold that the trial court abused its discretion by granting Cullen's motions to suppress. We therefore reverse the trial court's orders and remand the cause for further proceedings.

Concurring opinion by STEVEN C. HILBIG, Justice.

STEVEN C. HILBIG, Justice, concurring.

Although I agree with the result reached in the majority opinion, I write separately because of the majority's failure to address what I perceive to be various problems with the trial court's findings of fact and conclusion of law and the legal consequences flowing therefrom. Because findings of fact and conclusions of law are now required when requested in suppression cases and because the issues addressed in this concurrence are likely to arise again, I write separately to discuss these issues.

As related in the majority opinion, Cullen successfully challenged the evidence obtained as a result of his warrantless arrest for driving while intoxicated. In its first appeal to this court, the State claimed the trial court's failure to file findings of fact and conclusions of law when properly requested is error requiring remand to the trial court with instructions to make the requested findings and conclusions. *State v. Cullen,* 167 S.W.3d 428, 430 (Tex.App.-San Antonio 2005), *rev'd,* 195 S.W.3d 696 (Tex.Crim.App.2006). Because there was no authority requiring such findings and conclusions, and the trial court was enti-

tled to disbelieve all or part of the officers' testimony, this court affirmed the trial court's order granting the motions to suppress. *Id.*

The court of criminal appeals, however, granted the State's petition for discretionary review and concluded that findings of facts and conclusions of law are required when requested by the party losing a motion to suppress. *State v. Cullen,* 195 S.W.3d 696, 700 (Tex.Crim.App.2006). The court remanded the case to this court with instructions to order the trial court to enter findings of fact and conclusions of law. *Id.* Upon order by this court, the trial court filed findings of fact and conclusions of law. The pertinent findings of facts are summarized as follows: [1]

- the police heard a report of a vehicle traveling at a high rate of speed, driving erratically;

- Detective Biasiolli heard, then saw, the vehicle going north on Broadway, estimated the speed of the car to be sixty miles per hour, saw the vehicle attempt to turn without slowing, saw the vehicle crash into a telephone pole at sixty miles per hour, observed that Cullen was unsteady on his feet, had slurred speech and bloodshot, glassy eyes, and smelled the odor of intoxicants on Cullen's breath;

- Officer Marcus observed Cullen swaying as he walked, observed Cullen's bloodshot, glassy eyes, smelled a strong odor of intoxicants on Cullen's breath, observed that Cullen had all six clues on the horizontal gaze nystagmus test, and noted that Cullen exhibited "at least four clues" on the one-leg stand.

---

1. The complete findings of facts and conclusion of law are found in Appendix A of this opinion.

After finding these facts, the court entered Finding Number 14, which states, in relevant part:

> The Court finds that the defendant's head was traumatized. The Court finds that the testimony of Officer Marcus about the results of the field sobriety tests is not credible due to the head trauma. The Court finds that the defendant's red, bloodshot, glassy eyes were caused by the head trauma. The Court finds that the defendant's unsteadiness on his feet was caused by the head trauma.

The trial court then entered its single conclusion of law:

> And conclusion of law, the Court finds that the only credible evidence is that the defendant was speeding and had the smell of alcohol on his breath. Therefore, there was no probable cause to arrest the defendant for driving while intoxicated.

The trial court's actions in characterizing as "fact" that head trauma caused what is usually considered symptoms of intoxication and then apparently clothing that "fact" as a credibility choice is improper and allowed the trial court to refuse to consider evidence supporting a finding of probable cause. First, the "finding" that head trauma caused the poor results of the field sobriety tests; the red, bloodshot, glassy eyes; and the defendant's unsteadiness is really a **conclusion.** As a conclusion, it is subject to *de novo* review on appeal. Furthermore, as explained below, it is a conclusion not relevant to the probable cause review. Second, the trial court appears to be making a determination of what constitutes the better explanation as to the cause of the usual symptoms of intoxication—head trauma or alcohol—

then casting its decision in terms of "the credible evidence." It is within the trial court's province in a suppression hearing to determine if it believes (or finds credible) the testimony of a witness. For instance, the trial court makes a credibility choice to believe a witness's testimony that someone had bloodshot eyes, had all six clues on the horizontal gaze nystagmus test, or performed poorly on the field sobriety tests. But it is not the province of the trial court to decide the better or best underlying cause of the presence of the symptoms or behaviors. Such a decision is not the type of "credibility" choice envisioned by the standard of review. Furthermore, such a "conclusion" is not required by the probable cause standard and actually perverts that standard.

It is quite apparent the trial court believed Officer Marcus's observation that Cullen had red, bloodshot and glassy eyes and that he performed poorly on the field sobriety tests. If the trial court did not find that testimony credible, it would not have been necessary to "conclude" that head trauma caused those symptoms; rather, it would have found the symptoms did not exist. But the trial court's conclusion that head trauma caused the symptoms is of no importance in the determination of the existence of probable cause.

Probable cause for a warrantless arrest exists when the police have reasonably trustworthy information sufficient to warrant a person of reasonable caution to believe a particular person has committed or is committing on offense. *Torres v. State*, 182 S.W.3d 899, 901 (Tex.Crim.App. 2005); *Johnson v. State*, 32 S.W.3d 294, 298 (Tex.App.-San Antonio 2000, pet. ref'd). The determination of the existence of probable cause concerns the practical and realistic considerations of everyday life on which normal prudent people—not legal technicians—act. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App.1997). And while probable cause requires more than an officer's mere suspicion, it requires "far less evidence than that necessary to support a conviction or even that needed to support a finding by a preponderance of the evidence." *Id.* The determination of the existence of probable cause is judged by the totality of the circumstances. *Torres*, 182 S.W.3d at 902. Thus, under the proper standard for determining the existence of probable cause, even though there may be a number of explanations offered to account for an officer's observations, the pertinent question is whether one of those explanations is that the person was committing an offense.[2] *See id.* at 901.

There are two conclusions posited for the officers' numerous observations in this case—head trauma and driving while intoxicated. The issue before the trial court was whether its factual findings, including the observations of Officer Marcus, supported the conclusion that Cullen may have been driving while intoxicated. If the answer was "yes," the trial court was required to find probable cause existed. It is of no moment that the trial court's findings of fact might also support the conclusion that Cullen suffered head trauma. So long as a person of reasonable prudence could conclude, based on the totality of facts, that there was some evidence Cullen had lost the normal use of his physical or mental faculties due to the ingestion of alcohol and was operating a motor vehicle in a public place, probable cause existed.

2. The trial court's analysis in this case is somewhat similar to the abandoned standard of "conduct which is as consistent with innocent activity as with criminal activity" for determining if reasonable suspicion exists. *See Woods v. State*, 956 S.W.2d 33, 34 (Tex. Crim.App.1997).

Here, in addition to finding Cullen was speeding, involved in an accident, and smelled of alcohol, the trial court found that Cullen: (1) was unsteady on his feet and swayed; (2) had slurred speech; (3) had bloodshot, glassy eyes; (4) showed all six clues on the HGN; and (5) showed four clues on the one-leg stand. The trial court was not entitled to ignore these latter factual findings in determining whether probable cause existed and erred in doing so.

The trial court erred in failing to properly apply the probable cause standard. In its findings of fact and conclusion of law, it made conclusions not relevant to such determination, characterized conclusions as factual findings, and cast some of its conclusions as a credibility choice. Because the majority fails to address these important issues and provide guidance for making appropriate findings and conclusions in future cases, I cannot join in the majority opinion. However, because the majority reached the proper result, I hereby concur.

### APPENDIX A

Detective Paul Biasiolli, Detective Troy Marek and Officer Charles Marcus heard a radio broadcast by Bike Patrol wagon driver Lemastra of a description of a blue Volkswagen with a ski rack on top going north on Broadway at a high rate of speed, driving erratically and possibly a DWI.

Second finding, Detective Biasiolli and Detective Marek were outside their car speaking with the manager of Sam's Burger Joint.

Finding three, shortly thereafter Biasiolli and Marek heard the described vehicle approaching at a high rate of speed.

Fourth finding, Biasiolli turned around and saw the described vehicle going north on Broadway.

Finding Number 5, Biasiolli estimated the vehicle's speed at 60 miles per hour. Biasiolli was radar certified, and as a part of that certification had to learn to estimate speeds of moving vehicles.

Finding Number 6, Biasiolli saw the described vehicle attempt to make a turn without slowing from the 60 miles per hour, never braking. The vehicle was unable to make the turn and crashed into a telephone pole at 60 miles per hour. The Detective never lost sight of the vehicle. He and his partner, Detective Marek, drove to the scene. When they arrived, the defendant and his passenger were out of the car.

Finding Number 7, both air bags had deployed at 60 miles per hour. The passenger had a broken nose. Detective Biasiolli didn't see any bruises or blood on the defendant's head. He said it was a fairly violent collision. He wouldn't have been surprised if persons in the car were injured.

Finding Number 8, the detective observed that the defendant was unsteady on his feet, had slurred speech and bloodshot, glassy eyes. Later that night at the Intoxilyzer room he smelled the odor of intoxicants coming from the defendant's breath.

Finding Number 9, Officer Charles Marcus arrived at the scene very soon having been in the vicinity and heard the radio broadcast. He said the first thing he did was to find out who was injured and if anyone was intoxicated. Officer Marcus said, "that it was a fairly severe impact, a pretty good hit and that the accident was bad enough for air bags to go off, so bad enough."

Finding Number 10, Officer Marcus asked the defendant if he was injured and needed EMS. The defendant said he wasn't. Officer Marcus had the defendant walk over to him. And as he did, the defendant

was swaying. And when the defendant stopped, he lost his balance, and Officer Marcus held out his hand to help the defendant keep his balance. Officer Marcus observed that the defendant had blood-shot, glassy eyes and a strong smell of intoxicants on his breath. Officer Marcus looked in the car, saw both air bags had gone off so he wanted to make sure the defendant was actually okay and didn't need EMS. Defendant said he was okay and didn't need EMS. Officer Marcus again wondered about the air bags going off and hitting the defendant. He didn't see any bruises on the defendant's face, didn't see defendant's nose bleed, didn't see him hold his head or say "ouch" or didn't see any burns on defendant's face from the air bags. Officer Marcus observed that the defendant's glasses were on. Officer Marcus was of the opinion that the defendant was so intoxicated he wouldn't know if he was injured or not.

Finding Number 11, Officer Marcus administered the battery of standardized field sobriety tests to the defendant. He is certified to administer the tests. He knows that a person who has suffered a head injury would be inhibited in their ability to perform the standardized field sobriety tests. Officer Marcus knew that the defendant's vehicle had hit a telephone pole at 60 miles per hour and air bags had deployed and hit the defendant at that speed. The officer testified that the defendant had all six clues on the HGN, at least four clues on the one leg stand. And after the defendant put his foot down twice in nine seconds, the officer stopped the test fearing that the defendant would fall down and really hurt himself.

Finding Number 12, Officer Marcus took the defendant down to the DWI room where the defendant couldn't decide if he wished to give a breath sample so Officer Marcus took him to the video room where he was video taped.

Finding Number 13, Officer Marcus didn't know what percentage of people showed nystagmus after a head injury. Officer Marcus doesn't know if the defendant had a head injury. The officer asked the defendant on the video if he was injured. The defendant said he was injured. He said he had a head injury, that his head was traumatized. Officer Marcus just took the defendant at his word after asking him at least ten times if he was injured and again in front of the jail guards to protect himself if it turned out the defendant was injured.

Finding Number 14, the Court finds that the defendant was speeding at 60 miles per hour and hit a telephone pole at that speed. The Court finds that the defendant's air bag hit him at that speed. The Court finds that the defendant's head was traumatized. The Court finds that the testimony of Officer Marcus about the results of the field sobriety tests is not credible due to the head trauma. The Court finds that the defendant's red, bloodshot, glassy eyes were caused by the head trauma. The Court finds that the defendant's unsteadiness on his feet was caused by the head trauma. The Court finds that the defendant had a smell of alcohol on his breath.

And conclusion of law, the Court finds that the only credible evidence is that the defendant was speeding and had the smell of alcohol on his breath. Therefore, there was no probable cause to arrest the defendant for driving while intoxicated.