

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00162-CR

The **STATE** of Texas,
Appellant

v.

Spencer Kyle **SHAFER**,
Appellee

From the County Court at Law, Kerr County, Texas
Trial Court No. CR11-0402
Honorable Spencer W. Brown, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:         Karen Angelini, Justice
                 Patricia O. Alvarez, Justice
                 Luz Elena D. Chapa, Justice

Delivered and Filed:  June 26, 2013

AFFIRMED

The State of Texas appeals the trial court's order granting a motion to suppress.[1]  The State

contends: (1) the trial court's order and findings of fact and conclusions of law are not sufficiently

specific; and (2) the trial court erred in concluding that the defendant was unlawfully seized.  We

affirm the trial court's order.

---

[1] The motion granted by the trial court was the second motion to suppress filed by the appellee and heard by the trial court.  The trial court denied the first motion.

## BACKGROUND

On January 25, 2011, Trooper James Salaz was dispatched to the scene of a single-vehicle accident. Trooper Salaz arrived at the scene approximately forty minutes after receiving the dispatch. Deputy Luke Flores and Deputy Brian MacKinnon had arrived at the scene before Trooper Salaz. Deputy Flores and Deputy MacKinnon had retrieved and retained Shafer's driver's license and informed him that he was required to remain at the scene until Trooper Salaz arrived. Shafer was receiving treatment in an ambulance when Trooper Salaz arrived at the scene.

Neither Deputy Flores nor Deputy MacKinnon testified at the hearing on Shafer's motion to suppress. The only witnesses called to testify were Trooper Salaz and Shafer. Based on the testimony presented, the trial court concluded that Shafer was seized by Deputy Flores and Deputy MacKinnon prior to the arrival of Trooper Salaz and that the State presented insufficient evidence to justify the warrantless seizure.

## STANDARD OF REVIEW

"In reviewing a trial court's ruling on a motion to suppress evidence and its determination of the reasonableness of either a temporary investigative detention or an arrest, appellate courts use a bifurcated standard of review." *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). "They must give almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Id*. (internal citations omitted). "Appellate courts also afford the same level of deference to a trial court's ruling on 'application of law to fact questions,' or 'mixed questions of law and fact,' if the resolution of those questions turns on an evaluation of credibility and demeanor." *Id*. "The appellate courts review *de novo* 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Id*.

"When a trial court makes explicit fact findings, we determine whether the evidence (viewed in the light most favorable to the trial court's ruling) supports [those] fact findings." *State v. Cullen*, 227 S.W.3d 278, 281 (Tex. App.—San Antonio 2007, pet. ref'd). "We then review 'the trial court's legal ruling *de novo* unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal ruling.'" *Id.* (quoting *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)).

### SPECIFICITY OF TRIAL COURT'S ORDER AND FINDINGS

The State initially contends the trial court's order is vague and ambiguous and the trial court's findings of fact and conclusions of law fail to state the trial court's essential findings. We disagree.

As recognized by the State in its argument, a trial court is required to state only its essential findings. *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006). "Essential findings" are those findings of fact and conclusions of law "adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts." *Id.*

In this case, the trial court's findings clearly state that Shafer was seized by Deputy Flores and Deputy MacKinnon when they confiscated Shafer's driver's license and detained him at the scene until Trooper Salaz arrived. The trial court then concluded that the State failed to present sufficient evidence to justify Shafer's warrantless seizure by Deputy Flores and Deputy MacKinnon.

The State argues that the order fails to specifically identify which of the various grounds asserted in Shafer's motion was the basis for the trial court's ruling. The reporter's record from the hearing on the motion, however, demonstrates that Shafer's entire argument was focused on his detention by the two deputies prior to Trooper Salaz's arrival. Moreover, based on the trial

court's conclusions of law, the order suppressed all of the evidence obtained after the seizure by the deputies.

The State further argues that the trial court's findings fail to address numerous factual details relating to the deputies' detention of Shafer including: (1) the nature of the crash; (2) the nature of Shafer's injuries; and (3) the interaction between Shafer and the two deputies. The State's argument ignores, however, that the State had the burden to prove the reasonableness of Shafer's detention by the deputies. *See Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005) (describing burden). Despite having this burden, the State failed to call either deputy to testify and did not elicit any of the foregoing information in cross-examining Shafer. The trial court's findings are based on the evidence that was presented and are sufficient to provide this court "with a basis upon which to review the trial court's application of the law to the facts." *Cullen*, 195 S.W.3d at 699. Accordingly, the State's complaints are overruled.

**SEIZURE**

"[A]n investigative detention occurs when a person yields to [a] police officer's show of authority under a reasonable belief that he is not free to leave." *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). Stated differently, a seizure occurs "when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *State v. Garcia-Cantu*, 253 S.W.3d 236, 242 (Tex. Crim. App. 2008) (internal citations omitted). In this case, the State argues that Shafer was not detained or seized by the deputies because they were performing a community caretaking function.

Although the Texas Court of Criminal Appeals has recognized the existence of the community caretaking function in Texas, the court has "emphasize[d] its narrow applicability." *Wright v. State*, 7 S.W.3d 148, 152 (Tex. Crim. App. 1999). When the State seeks to rely on the

community caretaking function to justify a detention, the record must establish that the police officer is primarily motivated by his community caretaking function in detaining the defendant. *See Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002); *State v. Woodard*, 314 S.W.3d 86, 92 (Tex. App.—Fort Worth 2010), *aff'd*, 341 S.W.3d 404 (Tex. Crim. App. 2011). In this case, neither of the deputies testified with regard to their motivation; therefore, the record contains no evidence to support a finding that they were primarily motivated by their community caretaking function. Moreover, in concluding that the deputies' warrantless seizure of Shafer was not justified, the trial court implicitly rejected any inference of such a motivation that the trial court might have been able to draw from the circumstances.

The State also asserts, "The record was silent on whether Deputies Flores and MacKinnon had any direct contact or communication with Shafer." The record, however, belies this assertion. First, Trooper Salaz testified that Deputy Flores and Deputy MacKinnon provided him with Shafer's driver's license when he arrived at the scene. Shafer also testified that the deputies retrieved his driver's license from him and retained his license. In addition, Shafer testified that the deputies did not tell him that he was free to leave but told him that he was required to wait for the trooper to arrive. Thus, the evidence supports the trial court's finding that the deputies detained Shafer because Shafer yielded to the deputies' show of authority by their retaining his license and instructing him that he was required to remain at the scene until the trooper arrived. *See Crain*, 315 S.W.3d at 49; *Hayes v. State*, 132 S.W.3d 147, 153 (Tex. App.—Austin 2004, no pet.) (holding appellant was seized when officer retained defendant's driver's license to run a check while a backup officer waited beside the appellant). Although the State emphasizes that Shafer was receiving treatment in the ambulance when Trooper Salaz arrived at the scene forty minutes after the accident occurred, the trial court could have inferred from the evidence and circumstances that Shafer would have refused treatment and left the scene if he had not been instructed by the deputies

that he had to remain at the scene. Similarly, the trial court could have inferred that the ambulance would already have left the scene if the deputies had not required Shafer to remain at the scene until Trooper Salaz arrived.

## UNJUSTIFIED SEIZURE

In order to justify Shafer's detention, the State was required to prove the deputies had reasonable suspicion to detain him. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). "A police officer has reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.*

The State argues that the deputies had reasonable suspicion to detain Shafer based on the following facts: (1) Shafer was involved in a single-vehicle traffic accident; (2) the accident occurred during the daytime during clear, dry weather; (3) Shafer was found unconscious at the scene; and (4) Shafer smelled of alcohol. The fallacy in this argument, however, is that the record does not establish that the deputies smelled any alcohol on Shafer because neither of the deputies testified. *See Torres*, 182 S.W.3d at 903 (refusing to speculate about what information was in possession of deputies who did not testify at the suppression hearing). Moreover, although Shafer testified that he lost consciousness as a result of the accident, he also testified that he gave the deputies his driver's license and was instructed that he had to remain at the scene. Therefore, the only specific, articulable facts supported by the record were that the deputies knew Shafer was involved in a single-vehicle accident and had temporarily lost consciousness. These facts could not, however, lead the deputies to conclude that Shafer was, had been, or soon would be engaged

in criminal activity. *Elias*, 339 S.W.3d at 674. Therefore, the trial court did not abuse its discretion in granting the motion to suppress.[2]

## CONCLUSION

The trial court's order is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH

---

[2] We do not address the State's contentions with regard to Trooper Salaz's detention and arrest of Shafer because the resolution of those issues is not necessary to the final disposition of this appeal. *See* TEX. R. APP. P. 47.1.