

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00479-CR

The **STATE** of Texas,
Appellant

v.

John Thomas **CARR**,
Appellee

From the County Court at Law No. 5, Bexar County, Texas
Trial Court No. 506278
Honorable John Longoria, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice
                Irene Rios, Justice

Delivered and Filed:  July 25, 2018

AFFIRMED

The State of Texas appeals the trial court's order granting a motion to suppress filed by

John Thomas Carr. In its first issue, the State asserts the trial court abused its discretion in granting

the motion to suppress because Carr's arrest was supported by probable cause. In its second issue,

the State asserts the trial court abused its discretion "when it suppressed the blood evidence

because that evidence was procured pursuant to a valid warrant." We affirm the trial court's order.

## BACKGROUND

Carr was arrested for driving while intoxicated after he was stopped for speeding. After Carr's arrest, Officer Jeff Nugent prepared an affidavit seeking a search warrant to obtain a sample of Carr's blood for testing.

Carr filed a pretrial motion to suppress asserting he was arrested without probable cause. Carr's motion sought to suppress all evidence obtained as a result of his illegal arrest, including any blood sample taken. A hearing was held on Carr's motion. The only witness to testify was Officer Nugent, and the trial court reviewed the videotape of the stop and the affidavit prepared by Officer Nugent. At the conclusion of the hearing, the trial court granted Carr's motion and dictated verbal findings of fact and conclusions of law into the record. Pursuant to the State's request, the trial court also signed written findings of fact as follows:

## **FINDINGS OF FACT**

1. Defendant John Thomas Carr was arrested without warrant by Officer Jeff Nugent of the Alamo Heights Police Department for the offense of Driving While Intoxicated on or about December 4, 2015.

2. Defendant John Thomas Carr was stopped for Speeding, which was confirmed by radar.

3. The defendant pulled over approximately 41 seconds after Officer Nugent activated the lights on his squad car. Officer Nugent testified that the defendant started going right as if he was going to turn onto Austin Highway and then turned on Grandview Drive. The court, after reviewing the video finds that Defendant John Thomas Carr pulled over safely in a safe area on Grandview Drive in Alamo Heights.

4. Officer Nugent testified that it is not unusual for people to try to figure out a better place to stop for a police car. He also testified that Carr slowed down significantly after he turned on his lights.

5. Nugent further testified that speeding is not a sign of intoxication according to the National Highway Traffic Safety Administration (NHTSA). Nothing about the defendant's driving indicated that he was intoxicated.

6. When Officer Nugent made contact with the defendant, the defendant did not exhibit any slurred speech, despite Nugent's testimony to the contrary. Defendant Carr was able to very clearly provide his name, date of birth, and phone number. The court after reviewing the videos in this case did not observe the defendant to have slurred and slow speech. Nugent in later testimony described the speech as thick-tongued, which the court discredited. ***The court found this contradictory testimony to create a credibility issue with this witness***. (emphasis added).

7. The defendant was cooperative, did not have problems getting out of the car, and was wearing sweat pants, a t-shirt, and sandals (flip-flops) when Officer Nugent made contact with him. Nugent pointed out that it was cold throughout their interaction.

8. Contact with the defendant occurred at approximately 2:34 A.M.

9. The court did not find any testimony regarding the defendant having chapped lips to be persuasive or relevant in regards to alleged intoxication.

10. Officer Nugent gave varying accounts regarding the odor of intoxicants, coming from the vehicle, which he described in testimony as "strong" but in his report on that night and the affidavit in support of the search warrant list the odor as "moderate." ***This in-court exaggeration demonstrates the court's issue with the witness' credibility***. (emphasis added).

11. When Nugent asked the defendant if he had been drinking the defendant made an admission to having had two beers at 9:30 P.M. Carr was not asked to describe the size of the drinks.

12. Nugent testified that the defendant had his feet "spread kind of far apart," ***which the court did not find persuasive as another effort to exaggerate***. (emphasis added).

13. A second officer, identified at the hearing as Officer Steven Orr, arrived at approximately 2:45 A.M. Officer Orr did not testify at the hearing.

14. Officer Nugent testified that he was originally certified in the field sobriety tests in 2006 but couldn't recall when he was last re-certified / updated, demonstrating a proficiency issue to the court.

15. Officer Nugent asked the pre-qualifying questions for the Horizontal Gaze Nystagmus (HGN), which included whether the subject had any recent head trauma, and the defendant responded that he had suffered a Traumatic Brain Injury as a result of an IED in Iraq, specifically in Fallujah. The defendant also wore soft contacts. Nugent acknowledged in his testimony that certain brain injuries can cause nystagmus without alcohol, and that he did not know whether any nystagmus on that night was caused by a brain injury or something else.

16. In his report written on the night Officer Nugent indicated that Carr's eyes were glassy and slightly bloodshot, yet testified at the hearing that they were very bloodshot and watery. He also acknowledged that he did not state in his report that Carr's eyes were very bloodshot. ***The court finds this testimony to be another exaggeration and therefore not credible***. (emphasis added).

17. When testifying regarding the HGN, Officer Nugent could not properly name the final clue he was looking for. In viewing the video and testimony, the court noted that the stimulus was not properly held at maximum deviation for a minimum of four seconds. In reviewing the video the court finds that there was a single pass to each side, followed by two passes, followed by a single pass to each side where the officer told Carr to "keep following it with your eyes," then further instructions to follow with just his eyes, tapping the stimulus, followed by one and a half passes, stopping in the middle and raising the stimulus then tapping it, then passing to Carr's left side for a single pass before stopping in the middle, passing left, back to center, another pass to the left, tapping the stimulus in the center, passing to the left, telling the defendant to keep following it with his eyes. Throughout the test Officer Nugent moves the stimulus up and down in a small circle before performing vertical passes. The court finds that the test was not validly performed in execution nor qualification of the subject.

18. Defendant Carr was asked to perform the Walk and Turn test but felt the officer would fail him anyway, based upon everything he had read.

19. Defendant Carr also stated that his "balance was awful," and did not want to perform the One Leg Stand. Officer Nugent testified he was "wearing gear, it's a night where it's cold," as Carr was wearing sandals, a short-sleeved t-shirt, and sweatpants. Nugent asked Carr if he had ever had to "stand on one leg and lean over" and Carr responded that he hadn't.

20. Carr was not offered any kind of field sobriety test that did not have to do with physical field performance, including counting or an alphabet test.

21. Nugent was also incorrect in his report about the time the defendant was read his Miranda rights.

22. The Affidavit for Search Warrant and Magistration did not contain any information regarding the fact that Defendant Carr had informed Officer Nugent that he suffered a traumatic brain injury in Iraq. Nugent felt that this was not important information in regards to how the defendant performed any test.

In its conclusions of law, the trial court concluded Officer Nugent was not credible, asserting Officer Nugent provided contradicting testimony and exaggerated facts in an effort to support probable cause specifically referring to Officer Nugent's testimony regarding Carr's

driving behavior, slurred speech, and the odor of alcohol. The court expressly concluded, "When the single officer contradicts himself and there are substantial variances in the testimony in comparison to the report written on the morning the defendant was arrested, along with the officer's demeanor in his testimony, the court is left with serious questions regarding this officer's credibility." The trial court also concluded the HGN test was not properly administered, stating, "Due to the facts laid out in items 14, 15, and 17 above, as well as the court's concerns regarding the credibility of the arresting officer, the court discounts the testimony regarding the HGN."

### STANDARD OF REVIEW AND PROBABLE CAUSE

"We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review." *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). "At a motion to suppress hearing, the trial judge is the sole trier of fact and judge of credibility of witnesses and the weight to be given to their testimony." *Id.* at 190. "Therefore, we afford almost complete deference to the trial court in determining historical facts." *Id.* For example, "[w]hen there are factual disputes regarding testimony or the contents of a videotape, the trial court's findings of historical fact are afforded almost total deference" unless the videotape provides "indisputable visual evidence" inconsistent with the trial court's findings. *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012). We review the trial court's application of the law to the facts de novo, including "whether the facts, as determined by the trial court, add up to … probable cause." *State v. Ford*, 537 S.W.3d 19, 23 (Tex. Crim. App. 2017).

"Probable cause exists where the facts and circumstances known to law enforcement officers are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Marcopoulos v. State*, 538 S.W.3d 596, 599–600 (Tex. Crim. App. 2017) (internal quotation omitted). "The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer." *Amador v. State*, 275 S.W.3d 872, 878

(Tex. Crim. App. 2009). A reviewing court "must take into account 'the totality of the circumstances' known to the officer, eschewing a 'divide-and-conquer' or 'piecemeal' approach." *Marcopoulos*, 538 S.W.3d at 600. Probable cause must, however, be based on specific, articulable facts rather than the officer's mere opinion. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). "An unarticulated 'hunch,' a suspicion, or the good faith of the arresting officer is insufficient to support probable cause to justify a warrantless arrest." *Id.*

## ANALYSIS

In our analysis, we defer to the trial court's findings that Officer Nugent was not credible[1] and the HGN test was not properly performed. Based on these findings, the trial court "essentially eliminated" Officer Nugent's opinion that Carr was erratically driving, had slurred speech and bloodshot, watery eyes, emitted a strong odor of intoxicants, and failed the HGN test. Therefore, we afford no weight to those facts and circumstances in our probable cause analysis. *See State v. Cullen*, 227 S.W.3d 278, 282 (Tex. App.—San Antonio 2007, pet. denied).

The trial court did find that Carr was speeding and admitted consuming two beers approximately five hours before he was stopped. The other findings related to Carr's performance on the other two field sobriety tests Officer Nugent conducted.

With regard to the walk-and-turn test, the videotape shows that when Officer Nugent explained the instructions, Carr told him he did not think the test was fair because he had read that nobody could pass the test. Officer Nugent testified Carr started to perform the test but "wasn't very steady on his feet." The videotape shows Carr taking a few steps while Officer Nugent was

---

[1] Although the State heavily relies on our sister court's unpublished opinion in *State v. Long*, No. 03-11-00725-CR, 2012 WL 1959316, *4, 7 (Tex. App.—Austin May 31, 2012, no pet.) (not designated for publication), the trial court in that case expressly found the testifying officer to be credible, and the officer testified appellant was speeding, admitted consuming alcohol, had a "super strong odor of alcohol" and glassy, watery eyes, lacked smooth pursuit and swayed in performing the HGN test, and refused to perform the walk-and-turn test or one-leg-stand test. Accordingly, that opinion is readily distinguishable from the instant case.

explaining the instructions and then again stating he believed from what he had read that Officer Nugent would fail him regardless of his performance. Officer Nugent testified that he considered Carr to have refused the test and thought the refusal was based on Carr's belief "that he wasn't going to be able to pass the test." Officer Nugent agreed he was unable to grade Carr in terms of passing or failing the test but stated he took into consideration the clues of intoxication he observed from the amount of the test Carr did complete. The trial court found, "Defendant Carr was asked to perform the Walk and Turn test but felt the officer would fail him anyway, based upon everything he had read."

With regard to the one-leg-stand test, Officer Nugent testified that Carr attempted to do the test, and Officer Nugent noted two clues of intoxication which he agreed was "the bare minimum number [he needed] to show intoxication on that particular test." The trial court found, "Defendant Carr also stated that his 'balance was awful,' and did not want to perform the One Leg Stand. Officer Nugent testified he was 'wearing gear, it's a night where it's cold,' as Carr was wearing sandals, a short-sleeved t-shirt, and sweatpants. Nugent asked Carr if he had ever had to 'stand on one leg and lean over' and Carr responded that he hadn't."

In addressing the field sobriety tests in his verbal findings, the trial court found Carr's traumatic brain injury was a factor that Officer Nugent "completely ignored." The trial court stated, "It was unrefuted that he said I've had had [sic] a traumatic brain injury, yet, it is not referred to [in] any way or form or fashion and I don't think NHTSA wants to know if people have a traumatic brain injury or any kind of brain injury, just to know about it." The trial court expressed its belief that Officer Nugent should have inquired about any effects Carr felt as a result of his brain injury. The trial court questioned whether Carr's statement that he is not good at balancing "reach[ed] back to the [brain] injury." The trial court concluded, "I very much disagree with the impression that the officer had that the report of a traumatic brain injury was — didn't feel that it

- 7 -

was important." In his written findings, the trial court again noted Officer Nugent's belief that Carr's traumatic brain injury "was not important information in regards to how the defendant performed any test." Therefore, although the testimony and the videotape show Carr refused to perform one test, and Officer Nugent testified Carr exhibited the bare minimum of intoxication clues on the one-leg-stand test, the totality of the circumstances must take into account the trial court's historical finding that Officer Nugent completely discounted Carr's traumatic brain injury and its potential impact on his performance. *See Cullen*, 227 S.W.3d at 282 (affording no weight to appellant's poor showing on field sobriety tests because trial court's findings of historical fact "essentially eliminated" that fact "due to the head trauma Cullen purportedly suffered").

Taking into consideration Carr's speeding, his admission to drinking two beers, and his performance on the two field sobriety tests, coupled with the trial court's findings relating to Carr's traumatic brain injury, we cannot conclude the facts and circumstances that were not "essentially eliminated" by the trial court "are sufficient in themselves to warrant a man of reasonable caution in the belief that" Carr was driving while intoxicated. *See Marcopoulos*, 538 S.W.3d at 599–600. Therefore, we conclude the trial court did not err in granting Carr's motion to suppress.[2]

In its second issue, the State asserts the trial court abused its discretion "when it suppressed the blood evidence because that evidence was procured pursuant to a valid warrant." However, the State concedes in its brief that "[t]he trial court never addressed this issue." In order to preserve error for appellate review, the record must show the trial court made a ruling on a request,

---

[2] We note the cases cited by the State to support its position contain additional facts and circumstances not present in this case. *See Cullen*, 227 S.W.3d at 279, 282 (relying on evidence that appellant was driving erratically at a high rate of speed before crashing into a telephone pole after speeding through an intersection controlled by flashing yellow lights without slowing down and attempting a left-hand turn at 60 miles per hour, had a strong odor of alcohol on his breath); *State v. Garrett*, 22 S.W.3d 650 654 (Tex. App.—Austin 2000, no pet.) (relying on evidence that appellant "demonstrated unlawful and erratic driving behavior by driving through a red light and making a sudden turn into a parking lot" of an apartment complex where he did not reside, testimony that appellant "smelled strongly of alcohol [detectable from six to eight feet away], had watery eyes, and was unsteady on his feet," and appellant's refusal to participate in any field sobriety tests).

objection, or motion. TEX. R. APP. P. 33.1(a)(2). In its reply brief, the State argues "if this Court agrees with the State that the trial court incorrectly suppressed the evidence due to a lack of probable cause, it would then have to consider whether there were 'reckless omissions' in the search-warrant affidavit because, if so, that legal theory would also justify the trial court's suppression of the blood evidence." Because we hold the trial court correctly suppressed the evidence due to a lack of probable cause, we do not address the State's second issue.

## CONCLUSION

The trial court's order is affirmed.

Marialyn Barnard, Justice

DO NOT PUBLISH