TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00045-CR






Lisa Cole, Appellant


v.


The State of Texas, Appellee






FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY

NO. C-1-CR-07-209550, HONORABLE ELISABETH ASHLEA EARLE, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Lisa Cole pleaded no contest to the offense of driving while intoxicated. See
Tex. Penal Code Ann. § 49.04 (West 2003). The trial court assessed punishment at three days in jail. 
In a single point of error, Cole challenges the trial court's denial of her motion to suppress evidence. 
We will affirm the judgment.


BACKGROUND

 At the suppression hearing, the trial court heard evidence that, on May 19, 2007,
at approximately 1:45 a.m., Lakeway Police Department Officer Stephanie Campbell was
traveling eastbound on Lohman's Crossing, "one of the main roads in and out of Lakeway," when
she saw a vehicle pulled over on the side of the road, in a lane specifically marked off for bicycles. 
Officer Campbell described what she saw as follows: "I saw a vehicle--a white passenger car pulled
over on the side of the road with its light on and the engine running. And the high beams were on
the vehicle, and it was pulled all the way over, stationary." When Officer Campbell observed the
vehicle, she pulled up behind it and put on her rear emergency lights (1) and also a directional "aerial"
or "arrow" stick. (2)
 When asked why she did this, Campbell testified, "It's a safety--anytime you
check on any person or vehicle, you put some type of hazard lights on, so that way you don't get hit
by a vehicle, and that way you make yourself seen, especially at night." When asked if she was
initiating a traffic stop, Campbell testified, "No, ma'am, I wasn't. I was checking the welfare of the
subject that was in the vehicle, to see if anyone was even in the vehicle, because it's an odd place
for the vehicle to be." In fact, when asked on cross-examination if she observed any traffic violation,
Campbell testified, "No ma'am. She wasn't driving."

 Officer Campbell walked up to the vehicle and made contact with the driver and sole
occupant of the vehicle. Campbell testified,


The driver identified herself as Lisa Kay Cole. She handed me a Florida driver's
license. And I proceeded asking her if everything was okay, and where she was
coming from, where she was headed. She was very disoriented, couldn't answer my
questions, thought she was traveling on the wrong side of the roadway, and said that
she was coming from a friend's house in Lakeway and trying to get back there, but
didn't know if she was still in Lakeway or not.

While Campbell was talking with Cole, she smelled a "very strong" odor of alcohol and asked Cole
if she had been drinking. According to Campbell, Cole replied that "she had a couple of drinks; the
last one was around 7 o'clock that evening. And she went to about three or four different bars,
and also back over to her friend's house to have a couple of drinks." Suspecting that Cole might
be intoxicated, Campbell told her to exit the vehicle and proceeded to administer the standard
field sobriety tests. Campbell testified that Cole performed poorly on the tests. Campbell
subsequently arrested Cole for driving while intoxicated.

 Cole moved to suppress the above evidence of her intoxication on the basis that
Officer Campbell's "detention" of Cole did not fall within the community-caretaking exception to
the warrant requirement of the United States and Texas Constitutions. See U.S. Const. amend. IV;
Tex. Const. art. I, § 9; Cady v. Dombrowski, 413 U.S. 433, 441 (1973); Wright v. State, 7 S.W.3d
148, 151 (Tex. Crim. App. 1999). The State argued in response that, at the time Campbell first
encountered Cole, there was no detention. Therefore, according to the State, there was no need for
the requirements of the community-caretaking exception to be satisfied.

 The trial court denied the motion to suppress. Subsequently, Cole pleaded
no contest to the offense of driving while intoxicated and was sentenced to three days in jail. 
This appeal followed.


STANDARD OF REVIEW

 A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of
discretion. State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). In other words, the trial
court's ruling will be upheld if it is reasonably supported by the record and is correct under any
applicable legal theory. Id. That rule holds true even if the trial court gave the wrong reason for its
ruling. Armendariz v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). The trial judge is the
sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their
testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997). We give trial courts almost complete deference in determining
historical facts, but we review de novo the trial court's application of the law. Carmouche v. State,
10 S.W.3d 323, 327 (Tex. Crim. App. 2000).


ANALYSIS

 Cole asserts that the trial court abused its discretion in denying her motion to suppress
because Officer Campbell's initial "detention" of her was not justified by either reasonable suspicion
or the community-caretaking exception to the Fourth Amendment's warrant requirement. The State
maintains that, until Campbell asked Cole to exit her vehicle to perform field sobriety tests,
Campbell's interaction with Cole was merely an encounter that did not implicate Cole's
constitutional rights.

 Encounters are distinct from detentions. An investigative detention occurs when a
police officer restrains a person's freedom of movement, either by physical force or a show of
authority. State v. Griffey, 241 S.W.3d 700, 705 n.6 (Tex. App.--Austin 2007, pet. ref'd)
(citing Johnson v. State, 912 S.W.2d 227, 234 (Tex. Crim. App. 1995)). An investigative detention
constitutes a seizure and implicates constitutional safeguards. Id. (citing United States
v. Mendenhall, 446 U.S. 544, 554 (1980)). Investigative detentions require reasonable suspicion. 
See Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) ("An officer conducts a lawful
temporary detention when he has reasonable suspicion to believe that an individual is violating the
law."); State v. Nelson, 228 S.W.3d 899, 902 (Tex. App.--Austin 2007, no pet.) ("A warrantless
automobile stop is a Fourth Amendment seizure analogous to a temporary detention, and it must be
justified by reasonable suspicion."). Reasonable suspicion exists if the officer has specific,
articulable facts that, when combined with rational inferences from those facts, would lead him
to reasonably conclude that a particular person actually is, has been, or soon will be engaged
in criminal activity. Castro v. State, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007) (citing Garcia
v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)).

 In contrast to detentions, encounters are consensual interactions between citizens and
police that do not require reasonable suspicion and do not implicate constitutional rights. Florida
v. Royer, 460 U.S. 491, 497-98 (1983). Encounters occur when police officers approach an
individual in a public place to ask questions, request identification, or request consent to search as
long as the interaction is consensual--that is, as long as an officer does not convey a message that
compliance with the officer's request is required. Florida v. Bostick, 501 U.S. 429, 434-35 (1991). 
To determine whether an encounter between a police officer and a citizen rises to the level of a
detention, the inquiry is whether, "taking into account all of the circumstances surrounding the
encounter, the police conduct would have communicated to a reasonable person that he was not at
liberty to ignore the police presence and go about his business." State v. Garcia-Cantu, 253 S.W.3d
236, 242 (Tex. Crim. App. 2008) (citing Kaupp v. Texas, 538 U.S. 626, 629 (2003)).

 As support for its argument that the initial interaction between Officer Campbell and
Cole was merely an encounter, the State relies on this Court's decision in Franks v. State,
241 S.W.3d 135 (Tex. App.--Austin 2007, pet. ref'd). In Franks, a police officer noticed a vehicle
parked just off the highway "after dark." Id. at 139. The vehicle was stopped at a rest area, but its
engine was running and its dome light was on. Id. The officer parked his patrol car behind the
vehicle, activated his overhead lights, (3) approached the vehicle, and began talking to Franks, the
driver and sole occupant of the vehicle. Id. At some point during the conversation, Franks asked
the officer if she could leave. Id. The officer told her that she could not. Id. Eventually, Franks was
asked to step out of her vehicle, the vehicle was searched, and cocaine was found. Id. Franks filed
a motion to suppress the evidence, which the trial court denied. Id. at 140.

 This Court held that, once the officer refused Franks's request to leave, the encounter
became an investigative detention requiring reasonable suspicion of criminal activity. Id. at 142-43. 
Finding none, this Court reversed the trial court's denial of the motion to suppress. (4) Id. at 145. 
However, this Court also explained why the initial interaction between the officer and Franks was
not a detention:


The initial interaction between [the officer] and appellant, after he approached the
car, was an encounter. Although [the officer] parked his vehicle behind appellant's,
nothing in the record suggests that the position of his vehicle blocked hers or
prevented appellant from leaving the rest area by simply driving forward. Moreover,
appellant does not allege that the patrol car's siren was activated, that she received
any command over the patrol car's loudspeaker, or that [the officer] told her to turn
off her car's engine when he approached.


Id. at 142.

 The initial interaction between Officer Campbell and Cole is similar to the initial
interaction in Franks. Cole's vehicle was already pulled over on the side of the road. The engine
was running and the lights were on. Campbell parked her patrol car behind Cole's, activated her rear
emergency lights, approached the vehicle, and initiated a conversation with Cole. There is nothing
in the record to indicate that the position of Campbell's patrol car blocked Cole's or that Cole was
prevented from leaving by simply driving forward. Nor does the record reflect that the patrol car's
siren was activated, that Cole received any command from Campbell, or that Campbell told Cole to
turn off her engine.

 Cole asserts that the activation of Officer Campbell's rear emergency lights late at
night made the initial interaction a detention. However, in Franks, this Court observed that the
activation of a patrol car's lights, particularly "in an area that appeared dark and unoccupied,"
"does not necessarily constitute a detention." Id. This is because, "depending on the facts, officers
may well activate their emergency lights for reasons of highway safety or so as not to unduly alarm
the stopped motorists." Martin v. State, 104 S.W.3d 298, 301 (Tex. App.--El Paso 2003, no pet.). 
In this case, the record supports the trial court's implied finding that the patrol car's rear emergency
lights were activated for safety reasons, as Campbell testified that she activated them so that other
vehicles would not hit her car.

 Cole also contends that providing her driver's license to Officer Campbell
demonstrated that "she was submitting to the officer's show of authority." However, an officer
asking for and examining a driver's license, without more, does not transform an encounter into
a detention. See Royer, 460 U.S. at 501. There must be additional actions taken by the
officer which "amount to a show of official authority such that a reasonable person would
have believed that he was not free to leave." Id.; see also Bostick, 501 U.S. at 437 (holding that
"no seizure occurs when police ask questions of an individual, ask to examine the individual's
identification, and request consent to search his or her luggage--so long as the officers do not
convey a message that compliance with their requests is required."); Hunter v. State, 955 S.W.2d
102, 104 (Tex. Crim. App. 1997) (holding that encounter not rendered detention simply by virtue
of fact that officer asked for defendant's identification). For example, in Royer, "officers identified
themselves as narcotics agents, told [the defendant] that he was suspected of transporting narcotics,
and asked him to accompany them to the police room, while retaining his ticket and driver's license
and without indicating in any way that he was free to depart." Id. Based on those additional
circumstances, the Supreme Court held that the defendant had been detained. See id. Similarly, in
Hayes v. State, this Court held that an encounter became a detention when an officer took the
defendant's identification back to his patrol car to run a warrant check and had a backup officer
remain with the defendant while he was running the check. See 132 S.W.3d 147, 153
(Tex. App.--Austin 2004, no pet.).

 In this case, there is no indication in the record of actions by Officer Campbell
regarding Cole's driver's license of the sort that could transform the encounter into a detention. The
testimony in the record relating to Cole's driver license is limited to the following: "The driver
identified herself as Lisa Kay Cole. She handed me a Florida driver's license. And I proceeded
asking her if everything was okay, and where she was coming from, where she was headed." There
was no further testimony elicited about the circumstances surrounding the driver's license.

 Again, the test as articulated by the court of criminal appeals is whether, "taking into
account all of the circumstances surrounding the encounter, the police conduct would have
communicated to a reasonable person that he was not at liberty to ignore the police presence and go
about his business." Garcia-Cantu, 253 S.W.3d at 242 (emphasis added). We hold that the record
supports the trial court's finding that the initial interaction between Campbell and Cole was an
encounter, not a detention.

 The State concedes that, once Officer Campbell asked Cole to step out of her car to
perform field sobriety tests, the encounter became a detention. At that point, however, the record
supports the trial court's finding that Campbell had reasonable suspicion to believe that Cole was
driving while intoxicated. Campbell testified that she smelled a "very strong" odor of alcohol
coming from Cole when she was speaking with her. Campbell also testified that, when she was
talking to Cole, Cole "was very disoriented," "couldn't answer my questions," "thought she was
traveling on the wrong side of the roadway," and "didn't know if she was still in Lakeway or not." 
Cole also admitted to Campbell that she had drinking that night, went to "about three or four
different bars, and also back over to her friend's house to have a couple of drinks." These are
specific, articulable facts that, when combined with rational inferences from those facts, would lead
Campbell to reasonably conclude that Cole was driving while intoxicated. Because we conclude that
Campbell's detention of Cole was supported by reasonable suspicion, we need not address the
applicability of the community-caretaking exception.

 The trial court did not abuse its discretion in denying Cole's motion to suppress. We
overrule Cole's sole point of error.


CONCLUSION

 We affirm the judgment of the trial court.



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed: August 20, 2008

Do Not Publish
1. Campbell explained, "[W]e have LED lights. And there's a button, and you can make
all the lights come on, half the lights come on, or just the rear portion. Whenever I check []
on somebody to check their welfare, I only put on my rear portion lights . . . so that way, vehicles
don't hit my car."
2. In her testimony, Officer Campbell first uses the term "directional aerial stick" and,
later, uses the term "directional arrow." The record does not include a description of this
device, although an "aerial stick" has been described as a "flare emergency personnel place on
the ground to illuminate roadways." Junemann v. Harris County, 84 S.W.3d 689, 692 n.1
(Tex. App.--Houston [1st Dist.] 2002, pet. denied).

3. The officer testified that he activated the overhead lights on his patrol car to
illuminate the rest area, which did not have any lighting. Franks v. State, 241 S.W.3d 135, 142
(Tex. App.--Austin 2007, pet. ref'd).
4. This Court also explained why the community-caretaking exception to the warrant
requirement did not apply to the facts of that case. Id. at 143-45.